151 N.J. Super. 322 (1977)
376 A.2d 1266
BOROUGH OF KENILWORTH, A MUNICIPAL CORPORATION OF UNION COUNTY, NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DEPARTMENT OF TRANSPORTATION, STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 14, 1977.
Decided July 7, 1977.
*325 Before Judges LORA, CRANE and MICHELS.
Mr. Richard L. Rudin, Deputy Attorney General, argued the cause for appellant (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
*326 Mr. Aldan O. Markson argued the cause for respondent.
PER CURIAM.
Plaintiff Borough of Kenilworth instituted this action against defendant New Jersey Department of Transportation pursuant to the Environmental Rights Act, N.J.S.A. 2A:35A-1 et seq., seeking temporary and permanent injunctive relief against the widening of the Garden State Parkway. Kenilworth principally alleged that the Department of Transportation had failed to obtain a stream encroachment permit from the Department of Environmental Protection for the relocation of a segment of a man-made stream (known as stream 10-24) which lies within the Parkway right-of-way in Kenilworth. Kenilworth also alleged that the Department of Transportation, in carrying out the program, (1) was cutting down and destroying trees which will result in a substantial increase in noise and air pollution and the flow of surface water, and (2) failed to use reasonable methods to control rodents and other pests, as a result of which the residents will become subject to rodent infestation and concomitant health hazards.
The Chancery Division temporarily restrained the construction of the Parkway throughout the entire Kenilworth segment of the 12-mile project. The Department of Transportation's subsequent motion to dissolve the temporary restraints was denied, a preliminary injunction was issued and, although the court retained jurisdiction, it remitted the matter to the Department of Environmental Protection for a hearing on the Department of Transportation's application to relocate stream 10-24 in Kenilworth[1] and "for consideration *327 of the destruction of trees, alleged rodent infestation and all other facts relevant to the prevention or minimization of pollution, impairment and destruction of the environment," in accordance with the provisions of N.J.S.A. 2A: 35A-8.
Defendant moved for leave to appeal to this court in order to seek a reversal of the order of the Chancery Division and dismissal of Kenilworth's complaint. We granted the motion and accelerated the appeal on our own motion. We dissolved the preliminary injunction except with respect to the immediate area of the stream which covered a distance of approximately 315 feet. Both parties unsuccessfully moved for leave to appeal to the Supreme Court.
Kenilworth argues on this appeal that although the issue involving stream relocation was rendered moot by a decision to leave the stream in the same location and condition, there are two other claims arising under the Environmental Rights Act which warrant a remand for further proceedings. Specifically, Kenilworth contends for the first time on appeal that N.J.S.A. 2A:35A-4(a) authorizes it to seek enforcement of Executive Order No. 53 issued by Governor William T. Cahill on October 5, 1973, which requires state agencies to file environmental impact statements with the Department of Environmental Protection for certain major construction projects. Kenilworth also contends that N.J.S.A. 2A:35A-4(b) entitles it to a plenary hearing with respect to a variety of alleged possible consequences of the project, including increased noise and air pollution, rodent infestation, and the aggravation of a pre-existing drainage problem.[2] Although improperly raised, we will address these contentions.
The Department of Transportation contends, among other grounds, that the widening project is not subject to Executive Order No. 53. Furthermore, it claims that in view of the *328 comprehensive environmental review of the project conducted pursuant to the National Environmental Policy Act, 42 U.S.C.A. § 4321 et seq., Kenilworth cannot maintain an action alleging unspecified environmental harm under N.J.S.A. 2A:35A-4(b).
The essential facts are not in dispute. The affidavits and exhibits reveal that the Parkway widening project had its genesis sometime prior to 1972. Originally it was to be funded by the State, but the bond referendum authorizing the borrowing of funds for that purpose was defeated by the voters of New Jersey. The State then sought and obtained federal funding. Preliminary studies of the project's environmental impact were conducted as early as 1974. Subsequently, in April 1975, environmental review procedures for considering social, economic and environmental effects of highway projects were published as the New Jersey Action Plan. This plan was developed by the Department of Transportation pursuant to the Federal Aid  Highway Act of 1970, 23 U.S.C.A. § 109(h), and regulations promulgated thereunder by the Secretary of Transportation, 23 C.F.R. 795 (1977).
Pursuant to the New Jersey Action Plan, notice of intention to widen the Parkway was published on June 2, 1975. The notice solicited public comment and stated that any suggestions would be considered by the Federal Highway Division Administrator in connection with his classification of the project as a major or nonmajor federal action. On June 17, 1975 the New Jersey Department of Community Affairs, acting as a clearinghouse in accordance with the New Jersey Action Plan and United States Office of Management and Budget Circular A-95, informed the Department of Transportation that the project notification had been circulated to the appropriate state agencies and that none had voiced any objection.
In August 1975 the project was classified as a Level III project by the Department of Transportation. This cleared the path for seeking final approval of the project as *329 a nonmajor federal action. A formal request for approval of the project as a nonmajor federal action was made in November 1975. Approval was received on December 5, 1975 and a notice of such approval was published thereafter. The final plan called for 70% federal funding and 30% state funding. The Department of Transportation maintained operational control over the job and completion was targeted for the summer of 1979. As a "non-major federal action" no environmental impact statement or negative declaration (a declaration that the proposed project will have no significant impact upon the environment) was required pursuant to § 102(2) (C) of the national Environmental Policy Act, 42 U.S.C.A. § 4332(2) (C).
On March 3, 1976 officials of the Department of Transportation discussed possible drainage, air pollution and noise pollution problems with officials of Kenilworth. On April 19, 1976 Kenilworth's attorney advised borough officials to inform the Department of Transportation that the proposed widening of the Parkway would have a deleterious effect on already poor drainage in the area of stream 10-24. Another meeting was held on July 6, 1976, at which time officials of Kenilworth were shown a drainage study completed by a Department of Transportation consultant in which the increased runoff from the widening was estimated at only 0.4%. Air and noise pollution were also discussed. Assistant Commissioner Goodkind of the Department of Transportation told Kenilworth that they would have the air studies reviewed and an opinion given as to what emission levels would be expected in Kenilworth. Also, plan sheets from the noise report showing ambient and predicted noise levels were given to the borough engineer. Since these sheets showed acceptable noise levels, no noise attenuators were proposed. The mayor requested that he be notified when the Department of Transportation received final approval of the noise report from the Federal Highway Administration.
On August 12, 1976 the Commissioner of Transportation wrote to the mayor with respect to the drainage problem. The *330 closing paragraph of that letter stated: "After our studies are completed, the Department will notify you of the results. Please be assured that every effort will be made to relieve Kenilworth's flooding problems." Kenilworth's mayor responded by letter dated August 23, 1976 in which his reliance on the Commissioner's statements appears. No further information was provided Kenilworth by the Commissioner. However, notwithstanding the Commissioner's failure to furnish Kenilworth with any further information, Kenilworth did not institute this action until April 28, 1977  eight months after the Commissioner wrote to the mayor. In the meantime the Department of Transportation had entered into a contract for the widening of the Parkway, and the construction work had commenced and was in progress.
N.J.S.A. 2A:35A-4(a) provides that:
Any person may maintain an action in a court of competent jurisdiction against any other person to enforce, or to restrain the violation of, any statute, regulation or ordinance which is designed to prevent or minimize pollution, impairment or destruction of the environment.
Kenilworth seeks enforcement of Executive Order No. 53 issued by Governor Cahill on October 5, 1973 which requires state agencies to file environmental impact statements with the Department of Environmental Protection for certain major construction projects. The Department of Transportation did not comply with this order, but claims that the Parkway widening project is exempt from the order. It contends that the project was reviewed pursuant to the National Environmental Policy Act and thus was expressly excluded from the order by paragraph 7, which provides:
7. The provisions of this Order shall not apply to projects which are reviewed pursuant to the National Environmental Policy Act, nor shall it apply to maintenance or repair projects. [Emphasis supplied]
The Department of Transportation claims that studies of the environmental impact of the Parkway widening project *331 were performed in conformity with the New Jersey Action Plan which was developed under regulations promulgated pursuant to the Federal Aid  Highway Act of 1970, 23 U.S.C.A. § 109(h):
(h) Not later than July 1, 1972, the Secretary, after consultation with appropriate Federal and State officials, shall submit to Congress, and not later than 90 days after such submission, promulgate guidelines designed to assure that possible adverse economic, social, and environmmental effects relating to any proposed project on any Federal-aid system have been fully considered in developing such project, and that the final decisions on the project are made in the best overall public interest, taking into consideration the need for fast, safe and efficient transportation, public services, and the costs of eliminating or minimizing such adverse effects and the following:
(1) air, noise, and water pollution;
(2) destruction or disruption of man-made and natural resources, aesthetic values, community cohesion and the availability of public facilities and services;
(3) adverse employment effects, and tax and property value losses;
(4) injurious displacement of people, businesses and farms; and
(5) disruption of desirable community and regional growth. Such guidelines shall apply to all proposed projects with respect to which plans, specifications, and estimates are approved by the Secretary after the issuance of such guidelines.
See 23 C.F.R. 795.
Furthermore, notice of intention to widen the Parkway was published and public comments were solicited. The project notification was circulated to all appropriate state agencies pursuant to the Action Plan and Office of Management and Budget Circular A-95, and no objection was raised. The Department of Transportation classified the project as a Level III action. Subsequently, the Federal Highway Administration, acting under regulations promulgated pursuant to the National Environmental Policy Act, 42 U.S.C.A. § 4321 et seq., determined that the project was a "non-major federal action." See 23 C.F.R. 771.9 (1977). Thus, although no environmental impact statement or negative declaration *332 was required, 42 U.S.C.A. § 4332(2) (C), the project had been reviewed pursuant to the National Environmental Policy Act.
Kenilworth disagrees and contends that, in the absence of an environmental impact statement or negative declaration, the widening project was not "reviewed pursuant to the National Environmental Policy Act" within the meaning of paragraph 7 of Executive Order No. 53. Kenilworth argues that 23 C.F.R. 795, under which the New Jersey Action Plan was formulated, cites as its authority the Federal Aid-Highway Act of 1970, not the National Environmental Policy Act. Moreover, Kenilworth contends that a comparison of 23 C.F.R. 795 with 23 C.F.R. 771, which details the contents of environmental impact statements required in major federal actions, reveals that the former does not call for as comprehensive an environmental review as the latter.
It is clear that 42 U.S.C.A. § 4332(2) (C) which calls for the filing of an environmental impact statement or a negative declaration in major federal actions is but one feature of the National Environmental Policy Act. In its entirety, 42 U.S.C.A. § 4332(2) commands all federal agencies to
(A) utilize a systematic, interdisciplinary approach which will insure the integrated use of the natural and social sciences and the environmental design arts in planning and in decisionmaking which may have an impact on man's environment;
(B) identify and develop methods and procedures, in consultation with the Council on Environmental Quality established by subchapter II of this chapter, which will insure that presently unquantified environmental amenities and values may be given appropriate consideration in decisionmaking along with economic and technical considerations;
(C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on 
(i) the environmental impact of the proposed action,
(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

*333 (iii) alternatives to the proposed action,
(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and
(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.
Prior to making any detailed statement, the responsible Federal official shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved. Copies of such statement and the comments and views of the appropriate Federal, State, and local agencies, which are authorized to develop and enforce environmental standards, shall be made available to the President, the Council on Environmental Quality and to the public as provided by section 552 of Title 5, and shall accompany the proposal through the existing agency review processes;
(D) Any detailed statement required under subparagraph (C) after January 1, 1970, for any major Federal action funded under a program of grants to States shall not be deemed to be legally insufficient solely by reason of having been prepared by a State agency or official, if:
(i) the State agency or official has statewide jurisdiction and has the responsibility for such action,
(ii) the responsible Federal official furnishes guidance and participates in such preparation,
(iii) the responsible Federal official independently evaluates such statement prior to its approval and adoption, and
(iv) after January 1, 1976, the responsible Federal official provides early notification to, and solicits the views of, any other State or any Federal land management entity of any action or any alternative thereto which may have significant impacts upon such State or affected Federal land management entity and, if there is any disagreement on such impacts, prepares a written assessment of such impacts and views for incorporation into such detailed statement.
The procedures in this subparagraph shall not relieve the Federal official of his responsibilities for the scope, objectivity, and content of the entire statement or of any other responsibility under this chapter; and further, this subparagraph does not affect the legal sufficiency of statements prepared by State agencies with less than statewide jurisdiction.
(E) study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources;
(F) recognizes the worldwide and long-range character of environmental problems and, where consistent with the foreign policy of the United States, lend appropriate support to initiatives, resolutions, *334 and programs designed to maximize international cooperation in anticipating and preventing a decline in the quality of mankind's world environment;
(G) make available to States, counties, municipalities, institutions, and individuals, advice and information useful in restoring, maintaining, and enhancing the quality of the environment;
(H) initiate and utilize ecological information in the planning and development of resource-oriented projects; and
(I) assist the Council on Environmental Quality established by subchapter II of this chapter.
Additionally, federal regulations clearly state that the substantive provisions of the National Environmental Policy Act apply to all federal actions. 40 C.F.R. 1500.6(c) (1976). The one exception is found in § 102(2) (C) of that act which requires the filing of an environmental impact statement or negative declaration in major federal actions only. 42 U.S.C.A. § 4332(2) (C). See generally, Annotation, "Construction and Application of §§ 101-105 of National Environmental Policy Act of 1969 (42 U.S.C.S. § 4331-4335), Requiring All Federal Agencies to Consider Environmental Factors in Their Planning and Decisionmaking." 17 A.L.R. Fed. 33 (1973).
We note that the Federal Highway Administration's determination as to the "major" or "non-major" classification of the project is itself a significant environmental review under the National Environmental Policy Act. Thus, it is apparent that this case is clearly distinguishable both factually and legally from So. Brunswick Tp. v. N.J. Turnike Auth., 129 N.J. Super. 126 (App. Div.) certif. den. 66 N.J. 334 (1974).
Accordingly, we hold that despite the absence of an environmental impact statement or negative declaration, the Parkway widening project is exempt from Executive Order No. 53, and Kenilworth cannot maintain this action under N.J.S.A. 2A:35A-4(a).
We are equally satisfied that Kenilworth cannot maintain this action under N.J.S.A. 2A:35A-4(b). This section of the act provides:
*335 Except in those instances where the conduct complained of constitutes a violation of a statute, regulation or ordinance which establishes a more specific standard for the control of pollution, impairment or destruction of the environment, any person may maintain an action in any court of competent jurisdiction for declaratory and equitable relief against any other person for the protection of the environment, or the interest of the public therein, from pollution, impairment or destruction. [Emphasis supplied]
It is undisputed that the Department of Transportation conducted air, noise and drainage studies in accord with the New Jersey Action Plan. We hold that the New Jersey Action Plan and the regulations under which it was formulated establish "a more specific standard for the control of pollution" within the meaning of the exclusionary clause of N.J.S.A. 2A:35A-4(b). Accordingly, Kenilworth's claim based on alleged air and noise pollution and the creation of additional drainage problems does not furnish a sound basis upon which to pursue this action under section (b) of the act.
Furthermore, we are satisfied in light of all of the circumstances and the representations of the Department of Transportation, that the problem of rodent infestation, if it should materialize, will be corrected by the Department of Transportation. The claimed threat to the environment is not sufficient to warrant the court interfering with the completion of this important public project.
For the foregoing reasons, the order of the Chancery Division, as modified by this court, restraining the construction of the Parkway in the immediate vicinity of stream 10-24 and remitting the matter to the Department of Environmental Protection for further hearings in accordance with N.J.S.A. 2A:35A-8 is reversed and the matter is remanded to the trial court with direction that it enter an order dismissing the complaint.
In view of our disposition of this matter, we do not reach nor do we pass upon the remaining issues raised by the Department of Transportation and Kenilworth.
NOTES
[1] Following the issuance of the preliminary injunction the Department of Transportation revised its plans for the widening of the Parkway so as not to involve the relocation of any part of stream 10-24 in order to accommodate the extreme public need to complete the project on schedule. The Department of Transportation instead determined to build a retaining wall above the 100-year flood mark. Kenilworth concedes that as a result of this change in construction, the issue with respect to the stream is now moot.
[2] Kenilworth's attorney conceded at oral argument that its claim based on the cutting down of trees also is moot now.