207 N.J. Super. 80 (1986)
504 A.2d 19
TOWNSHIP OF HOWELL AND TOWNSHIP OF HOWELL BOARD OF HEALTH, PLAINTIFFS-APPELLANTS,
v.
WASTE DISPOSAL, INC., A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT, AND STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION, PLAINTIFF-RESPONDENT,
v.
WASTE DISPOSAL, INC., A NEW JERSEY CORPORATION, AND SCA SERVICES, INC., A DELAWARE CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 17, 1985.
Decided January 7, 1986.
*82 Before Judges KING, SIMPSON and SCALERA.
*83 Michael Gordon argued the cause for appellants (Gordon and Gordon, attorneys, Michael Gordon, on the brief).
Theodore A. Schwartz argued the cause for respondents, Waste Disposal, Inc., (Schwartz, Tobia and Stanziale, attorneys, Warren B. Kosdan, on the brief).
Marty M. Judge, Deputy Attorney General, argued the cause for respondent, State of New Jersey, Department of Environmental Protection (Irwin I. Kimmelman, Attorney General, Marty M. Judge on the brief, James J. Ciancia, Assistant Attorney General, of counsel).
Richard E. Shapiro, Deputy Public Advocate, argued the cause for amicus curiae, State of New Jersey, Department of the Public Advocate (Alfred A. Slocum, Public Advocate, Richard E. Shapiro of counsel, Bruce S. Schwartz, Assistant Deputy Public Advocate, on the brief).
The opinion of the court was delivered by SCALERA, J.S.C. T/A
This case involves the question of who and under what circumstances persons other than the State Department of Environmental Protection can sue to enforce diverse environmental protection legislation enacted in New Jersey. We are called upon to thread through statutes and common law rights and arrive at solutions which will protect the very important public interests involved, yet preserve the rights of private parties against multiple and vexatious litigation. We are mindful that there is no political subject more prevalent in the minds of our citizenry than protection and preservation of our worldly environment for a myriad of obvious reasons.
Waste Disposal, Inc., (WDI), which is a wholly owned subsidiary of SCA Services, Inc., owns and operates a sanitary landfill in Howell Township, New Jersey. Pursuant to the Solid Waste Management Act, (Solid Waste Act) N.J.S.A. 13:1E-1 et seq., the Department of Environmental Protection (DEP) issued to WDI a certificate of approved registration and engineering *84 design approval to operate this landfill. During the fall and winter of 1980, water and sediment sampling was performed at the WDI landfill and adjacent areas by a joint team from the DEP and the United States Environmental Protection Agency. Subsequent chemical analysis disclosed that significant concentrations of benzene, toluene and other toxic volatile organic pollutants were present in the groundwater at the site. Also, the leachate flow from the landfill was contaminated with high concentrations of toxic volatile organic compounds. The contaminated leachate and groundwater was discharged into Muddy Ford Brook, which flows along the western side of the landfill. Volatile organic compounds were present also in groundwater on the eastern side of the landfill and in the sediments of Sandy Hill Run which flows along the eastern edge of the landfill. In addition, heavy metal contaminants were present in groundwater on the eastern and western side of the site, in leachate, and in the stream water of Sandy Hill Run.
As a result of these findings, WDI entered into an administrative consent order with the DEP dated May 8, 1981, pursuant to the Solid Waste Act. WDI was required to develop and submit to the DEP by March 30, 1981, a program addressing the containment of contamination and control of the quality of leachate discharged from the landfill. Also, WDI was required to establish a program for a ground and surface water monitoring system, the treatment of contaminated water discharged from the landfill, and the removal of hazardous substances located on the landfill. If WDI failed to comply with the terms of the administrative consent order, the DEP reserved the right to seek full enforcement of the order in the Superior Court.
At approximately the same time that the DEP was attempting to achieve this solution, the Township of Howell (Township) along with its Board of Health filed a complaint in the Superior Court, Chancery Division seeking injunctive relief and statutory penalties against WDI as a result of its alleged violation of the *85 Solid Waste Act.[1] WDI sought a dismissal of the complaint on the grounds that plaintiffs lacked standing, had failed to exhaust their administrative remedies and that the court lacked subject matter jurisdiction. An order dismissing the complaint against WDI was entered. The Township and its Board of Health filed an appeal with this court.
While that appeal was pending, DEP continued its efforts to achieve a voluntary correction of the contamination at the landfill. As required by the administrative consent order, WDI submitted a proposed remedial program to which the DEP gave conceptual approval. As a result of further negotiations in which the Township participated, a more comprehensive administrative consent order was entered into by WDI. The Township was a signatory to this agreement, along with the DEP and WDI.
Under the terms of the second administrative consent order, which was entered into pursuant to the Solid Waste Act, and the Water Pollution Control Act, (Water Pollution Act) N.J.S.A. 58:10A-1 et seq., WDI agreed to a construction schedule for implementation of the remedial program. Among other items, WDI was required to install a final clay cap on finished areas of the landfill, an intermediate clay cap on remaining areas of the site, a slurry cut-off wall and a well point-pump collection system. It also was required to construct a leachate treatment facility and a sewer extension. In addition, WDI agreed to relocate the Muddy Ford Brook and to install a leachate collection and drainage system and gas vents. The order again provided that if WDI failed to comply with the terms of the administrative consent order, the DEP reserved the right to seek full enforcement of the order in the Superior Court. Shortly after execution of this administrative consent order, the Township and its Board of Health advised the Appellate Division *86 that the matter on appeal had been settled and consequently, an order was entered dismissing that appeal.
Subsequently a compliance review conducted by the DEP in November, 1983 disclosed that WDI uniformly had been late in meeting the compliance dates set forth in the administrative consent order. Thus, on May 16, 1984, the Township unilaterally filed the instant complaint against WDI seeking injunctive relief, damages, cleanup costs and penalties as a result of illegal hazardous substance contamination to the surface and groundwater in the vicinity of the WDI landfill which posed a serious threat to the public health and environment.
The complaint alleged that WDI had failed to comply with the latest consent order as evidenced by its failure to construct a leachate treatment facility, sewer extension and well point-pump collection system and by its delinquent performance of other work items. The complaint also was based on rights accorded under the provisions of the Solid Waste Act and the regulations promulgated thereunder, the Environmental Rights Act, N.J.S.A. 2A:35A-1 et seq., the Spill Compensation and Control Act, (Spill Act) N.J.S.A. 58:10-23.11 et seq., and the regulations promulgated thereunder, the Water Pollution Act and the regulations promulgated thereunder; the water quality legislation set forth in N.J.S.A. 23:5-28; strict liability, common law nuisance and common law negligence. WDI filed an answer which denied the material allegations of the complaint and challenged the Township's authority to institute the action. In addition, the answer contained numerous defenses, included among which were the allegations that plaintiff lacked standing, that the complaint was barred by the doctrine of preemption, and that the DEP was vested with exclusive authority to enforce the administrative consent order.
The DEP sought leave to appear as amicus curiae in the matter based on allegations that it had a special interest in the case since the complaint raised issues involving the administrative consent order to which it was a party and that as the *87 agency created by the Legislature to implement environmental statutes, it had expertise which could assist the court. The DEP initially took the position that the Township had standing to pursue the action since the Township was a signatory to the administrative consent order. The DEP also felt that the Township's Board of Health had standing to bring the action pursuant to the Solid Waste Act, so long as the DEP did not intervene or institute a separate action in the Superior Court. At the same time, WDI sought a dismissal of the Township complaint asserting that it lacked standing to pursue the action under the various environmental statutes cited in its complaint. WDI further argued that the DEP had the exclusive authority to enforce the terms of the administrative consent order. The trial judge denied the DEP's application to appear as amicus curiae and instead ordered that it become a party to the action. The DEP then successfully sought leave to intervene as a plaintiff in the matter. In addition, the court allowed the complaint to be amended to include the Township's Board of Health as a party plaintiff.
Thereafter, the trial court granted WDI a partial dismissal of the complaint of the Township and the Board of Health. Specifically, it found that "once the State comes in and intervenes in the matter as a plaintiff, then the State's rights are preemptive of any rights of the municipality or Board of Health which might ... be involved in this suit insofar as the State's claim is concerned." To the extent that the DEP's complaint sought relief from WDI and advanced claims which were identical to the claims advanced and relief sought by the Township and the Board of Health, the court held that the DEP's action was preemptive and it had exclusive authority to commence enforcement proceedings insofar as the administrative consent order was concerned. However, the court reserved decision on the question of whether the DEP's participation in the action preempted all remaining aspects of the Township's complaint, and set this issue down for determination at a subsequent date.
*88 DEP as plaintiff, filed its complaint against WDI and its parent corporation, SCA Services, Inc., in which it sought injunctive relief, statutory penalties, attorney's fees and costs of suit. The complaint was based on the Solid Waste Act, and the regulations promulgated thereunder, and the Water Pollution Act. It further alleged that WDI operated its landfill in violation of the administrative consent order which was issued pursuant to the Solid Waste Management Act due to its failure to relocate the Muddy Ford Brook and to construct a leachate treatment facility, a sewer extension and a slurry cut-off wall, as well as its failure to install a well point-pump collection system, a final or intermediate clay cap, a leachate drainage and collection system and gas vents. The complaint further asserted that WDI had violated the Water Pollution Control Act due to its discharge of pollutants without a permit into the Muddy Ford Brook, which pollutants had traveled into the ground and/or surface waters of the state.
Thereafter, the DEP and WDI entered into negotiations which ultimately resulted in a partial settlement of the DEP's action against WDI and SCA Services, Inc. The Township did not participate in these negotiations. The partial settlement was placed on the record before the trial court and eventually reduced to a consent judgment which embodied the terms of the settlement. That consent judgment effected a partial resolution of the dispute by setting forth a revised schedule for WDI's completion of the environmental improvements contained in the prior administrative consent order. The effect of this partial settlement was to dispose of all issues raised in the DEP's complaint, with the exception of its demand for payment of statutory penalties, which issue remains pending in the trial court.
Following this partial settlement, the trial court granted a dismissal of the remainder of the Township's complaint on the ground that the Township did not have standing to sue under the Solid Waste Act, the Water Pollution Act, the Environmental Rights Act and the Spill Act. With regard to the Solid *89 Waste Act, it held that because this statute only allows the DEP or a local or county board of health to sue and provides no standing to municipalities, the earlier dismissal of the Board of Health as well as the DEP's decision to intervene in the action deprived the Township of standing under the act. As to the Spill Act and the Water Pollution Act, the court held that only the DEP had standing to sue under those statutes. With regard to the Environmental Rights Act, it determined that this statute did not create a private right of action to enforce an administrative consent order of the DEP. The court observed that where the DEP has already proceeded to take appropriate enforcement action, a private party is precluded from taking similar action pursuant to that act.
The Township and its Board of Health filed a notice of appeal with this court from the order dismissing the complaint. Subsequently, the Township and its Board of Health supplemented their notice of appeal with a motion for leave to appeal. This motion was denied and an order was entered dismissing the appeal. Thereafter, the Township and its Board of Health filed another motion for leave to appeal with the Supreme Court. This motion was granted by the court and an order was entered remanding the matter to the Appellate Division for consideration on the merits. Before the matter was argued the Public Advocate was permitted to file an amicus curiae brief and to participate in oral argument.
The DEP was organized in 1970 when the Legislature mandated that it assume control of the functions of a variety of departments, divisions and councils which theretofore had operated separately. N.J.S.A. 13:1D-1 et seq., L. 1970, c. 33, § 1 et seq., eff. April 22, 1970. It was commissioned to exercise various powers including the formulation of "comprehensive policies" for "... the promotion of environmental protection and the prevention of pollution of the environment of the State." N.J.S.A. 13:1D-9. As such it was expressly empowered to "[e]nforce the State air pollution, water pollution ... waste and refuse disposal laws, rules and regulations; ...." *90 N.J.S.A. 13:1D-9n. In other words, the DEP "... ha[d] the duty to prevent pollution and wide latitude in protecting the public health by controlling pollution." Lom-Ran v. Dept. of Environmental Protection, 163 N.J. Super. 376, 385 (App.Div. 1978). Unquestionably the DEP has been clothed with primary responsibility to regulate activity affecting the environment in the state as well as exercising oversight powers in this area of concern.
From time to time the Legislature has addressed particular areas of environmental considerations resulting in the passage of piecemeal regulatory legislation. For example, the Solid Waste Act was originally enacted in 1970, L. 1970, c. 39, § 1, eff. May 6, 1970 and was amended by L. 1975, c. 326, § 2, again by L. 1976, c. 42, eff. July 1, 1976 and most recently by L. 1984, c. 7, § 1, eff. February 22, 1984. There the Legislature specifically announced as "policy" that it wanted the DEP to assume a "meaningful and responsible role" in this area through development of statewide "... solid waste management plan objectives, criteria and procedures...." N.J.S.A. 13:1E-2b(6). It authorized DEP to delegate its functions under this Act to various other public agencies, including county and municipal boards of health. N.J.S.A. 13:1E-6b(5). Under N.J.S.A. 13:1E-9, it clothed all implementing codes, rules and regulations adopted by DEP with the force and effect of law and authorized the DEP to "... institute an action or proceeding ... for injunctive and other relief, ..." including the power to seek money penalties. Finally therein, the DEP specifically was "... authorized and empowered to compromise and settle any claim for a penalty...." N.J.S.A. 13:1E-9d.
By virtue of the most recent amendment, a local board of health or county health department also was authorized to institute a legal action for injunctive and other relief under the Solid Waste Act provided notice was given to the DEP. The sponsor's statement to the amendment explained it as follows:
The purpose of this bill is to allow local boards of health and county health departments, concurrently with the Department of Environmental Protection to *91 enforce the provisions of the "Solid Waste Act," P.L. 1970, c. 39 (C.13:1E-1 et seq.).
At present, local boards of health and county health departments have the right to enforce the department regulations along with the department itself, but only the department may institute an action or proceeding in the Superior Court for injunctive and other relief to enforce its rules and regulations. The only enforcement power given to local boards of health and county health departments is an action for the imposition of a fine.
By providing local boards of health and county health departments with the right to seek injunctive or other relief from the Superior Court, they will better be able to respond expeditiously to critical situations without the cumbersome procedure of convincing the department to file its own law suit.
However, the new grant of enforcement rights to local health authorities was conditioned specifically upon a requirement that it "conform" to the "County Environmental Health Act," N.J.S.A. 26:3A2-21 et seq. A review of that statute quickly reveals a legislative intent that any local enforcement of noise, solid waste or water pollution laws must be done in a manner "consistent with certain overall performance standards" established by DEP. N.J.S.A. 26:3A2-22.
The trial judge in this case relied heavily on a case where another trial judge determined that once the DEP assumed control of such enforcement proceedings, the rights of the local health authorities to do so were barred. Bordentown Tp. Bd. of Health v. Interstate Waste, 191 N.J. Super. 128 (Law Div. 1983). The judge in that matter reasoned that any other interpretation would result in,
... simultaneous actions involving identical claims, raising unnecessary questions concerning authority over the litigation, its conduct and its possible settlement. (Id. at 139).
The Spill Act was enacted in 1976. L. 1976, c. 141, § 1 et seq. The passage of this environmental protection legislation was accompanied by a strong statement that the state intended to assert it parens patriae role in protecting the citizens from the discharge of petroleum products and other hazardous substances as a threat to the public health, safety and welfare. N.J.S.A. 58:10-23.11a. Again it was the DEP that was authorized to promulgate the rules and regulations which would control such activities and provided for compulsory payment for *92 costs and damages by offenders. This enactment deviated somewhat from the exclusivity of DEP authority because it specifically authorized the Department of the Public Advocate to act as counsel for assertion of claims by a class of aggrieved persons and preserved other common law rights by "any person." N.J.S.A. 58:10-23.11q.
The Water Pollution Act was passed in 1977. L. 1977, c. 74, § 1 et seq. That Act concentrated on the threat to ground and surface water in the state and sought to implement the Federal Water Pollution Control Act Amendments of 1972. (P.L. 92-500; 33 U.S.C.A. § 1251 et seq). Again it was the DEP that was empowered to exercise supervisory jurisdiction and to enact implementing codes, rules and regulations to prevent, control or abate water pollution throughout the state. N.J.S.A. 58:10A-4, 5a. To that end, no person could discharge any pollutant into such waters without complying with DEP requirements and securing a permit from DEP. N.J.S.A. 58:10A-6. In addition, the DEP specifically was designated therein as the entity authorized to take a variety of steps towards violators including, the issuance of an administrative order, institution of a civil action for injunctive relief and compensatory damages, levying of a civil administrative penalty, instituting a civil action for a civil penalty or requesting the Attorney General to institute a criminal proceeding. N.J.S.A. 58:10A-10. This legislation did not address the question whether any other person could otherwise assert and enforce rights in the general area of environmental protections.
N.J.S.A. 23:5-28 originally was enacted before 1950 and made it unlawful to adulterate state waters. According to its current provisions DEP again is authorized specifically to exercise control over the initiation of suits to gain injunctive relief and to seek and control the monetary penalty provisions of that Act. This court, in State v. Jersey Central Power & Light, 133 N.J. Super. 375 (App.Div. 1975), rev'g on other grounds, 69 N.J. 102 (1976), had occasion to discuss the parens patriae role of *93 the state in enforcing such legislation. We observed at that time,
... It seems to us that absent some special interest in some private citizen, it is questionable whether anyone but the State can be considered the proper party to sue for recovery of damages to the environment. (Id. 133 N.J. Super. at 392).
It should be noted that this case was argued on October 30, 1974 and decided on March 21, 1975, during the same time frame as the passage of the Environmental Rights Act, N.J.S.A. 2A:35A-1 et seq., which became effective on December 9, 1974. No discussion of that legislation is found in that opinion. Cf. Dept. of Transportation v. PSC Resources, Inc., 159 N.J. Super. 154, 162-163 (Law Div. 1978).
Consideration of the Environmental Rights Act, in conjunction with the other laws extant in this area, is critical to a resolution of the issue before us. That act constitutes umbrella legislation in an area of great current public concern. It was passed primarily to insure access to the courts by all persons interested in abating or preventing environmental damage. N.J.S.A. 2A:35A-2. This is accomplished primarily by removal of any common law barrier requiring demonstration of special damage to persons seeking such relief. Goldshore, "A Thumbnail Sketch of the the Environmental Rights Act," 70 N.J. State Bar J.18 (Winter 1975). A careful reading reveals that the act was structured deliberately to achieve that goal but not to sacrifice the paramount right of the state to control such action through its delegated agency. Essentially it empowers any person to maintain an action to enforce or restrain violation of any statute, regulation or ordinance establishing protection against impairment or destruction of the environment. N.J.S.A. 2A:35A-4a. At the same time, the act makes clear that the courts should assume a supervisory role in dismissing "patently frivolous, harrassing" litigation or that which is "wholly lacking in merit." N.J.S.A. 2A:35A-4c. It also recognizes that multiple and vexatious litigation should not be tolerated. To that end it provides that the courts should apply the "doctrines of collateral estoppel and res judicata ... to prevent *94 multiplicity of suits." N.J.S.A. 2A:35A-10b. In anticipation that applications of those doc-trines could be contrived by interested persons to work a bar to legitimate enforcement, no such suit may be dismissed absent the scrutiny and approval of the court. N.J.S.A. 2A:35A-10c.
Given these legislative protections for the benefit of all interested parties, the Environmental Rights Act was designed to bring before a proper forum particular problems involving alleged threats or damage to the environment. Whether couched in terms of violations of specific statutes designed to protect the environment, such as those raised here, or implementing rules, regulations or ordinances, or based on non-codified principles under common law, the function of the courts is clear  they are required to "... adjudicate the impact of [the alleged] conduct on the environment and in the interest of the public...." N.J.S.A. 2A:35A-7b. If necessary a court may utilize the expertise of interested administrative agencies to assist it in reaching a just result. At the conclusion of its adjudicative process a court has available to it a wide range of alternative dispositions including the issuance of injunctive and other equitable relief.
Given the broad sweep of the clear statutory language in the Environmental Rights Act, it appears incontrovertible that initially at least, "any person" may be a proper party plaintiff to attack environmental pollution, actual or threatened. This enforcement right applies also to statutes passed subsequent to enactment of the Environmental Rights Act. Dept. of Transportation v. PSC Resources, Inc., 159 N.J. Super. at 162-163. Given our previous observations, it is clear that the legislature has entrusted to the DEP primary and supervisory enforcement powers under the various environmental protection legislation. (E.g., see the Sponsor's Statement to Assembly Bill 1245, enacted as the Environmental Rights Act.
The bill recognizes that the primary responsibility to prosecute polluters rests with government. In those instances where government is unable or unwilling *95 to take the necessary action, any person should be assured of an alternative course of action).
To insure this and protect against improper encroachment on that responsibility, the Environmental Rights Act provides that any action instituted pursuant to its authority requires notice to the DEP. N.J.S.A. 2A:35A-11. Obviously, this notice requirement was designed to allow that agency to exercise value judgments in individual cases, e.g., whether it will join in that litigation or enforcement proceeding, whether other actions it may have taken already with respect to the particular problem or offender would render the litigation subject to collateral estoppel or res judicata principles, whether its expertise would assist the court, whether broad state interests would be sacrificed unduly to regional or personal interests by the instigators of that litigation, etc. Obviously, if the DEP expresses no interest and elects not to join that action, in the absence of a court ordering it to be made a party, as occurred here, (R. 4:28-1), the action may proceed in accordance with the rights accorded in the Environmental Rights Act.
However, should DEP elect to intervene, what then are the rights of the initial plaintiffs? Are they ousted of standing? Should they be allowed to remain as nominal parties? May they enjoy co-equal plaintiff status with DEP? May they continue to maintain the action independent of and in spite of DEP's intervention?
Contrary to the position urged by all persons appearing on this appeal, there is no per se rule which will serve as an appropriate solution to all situations which may be posited. Rather the solution lies within the framework of the individual set of facts in each case. As noted the statutory authority and its legislative history make clear that it is the DEP which is entrusted initially with the right to determine the primary course of action to be taken against persons who damage or threaten the environment. In order to be effective, it must normally be free to determine what solution will best resolve a problem on a state or regional basis given its expertise and *96 ability to view those problems and solutions broadly but that discretion is not unfettered.
We believe that the determination of whether DEP, in a given situation, has exercised properly its preemptive jurisdiction should be resolved by the court when it is asserted that, DEP has failed in its mission, neglected to take action essential to fulfill an obvious legislative purpose, or where it has not given adequate and fair consideration to local or individual interests. In other words where the state agency has failed or neglected to act in the best interest of the citizenry or has arbitrarily, capriciously or unreasonably acted, then a court should permit interested persons to continue with enforcement under the Environmental Rights Act. Cf. Student Public Interest Research Group v. Fritzsche, Dodge & Olcott, 579 F. Supp. 1528 (D.N.J. 1984), aff'd. 759 F.2d 1131 (3rd Cir.1985). In enacting the Environmental Rights Act the Legislature has recognized that the DEP may fail to act to correct a particular problem or not take proper and necessary action where conflicting interests appear. Further, in a given situation DEP may seek less than full relief available under relevant legislation. In such a case, there is a clear right granted to other "persons" to seek such relief under the Environmental Rights Act. No court should enforce grudgingly that right simply because of supervisory difficulties which may be encountered.
On the other hand, the unrestricted allowance of multiple enforcement actions may well be counterproductive of legitimate DEP action and compound the concern posed by the court in Bordentown Tp., supra. However, by recognizing the DEP role of primary enforcement of environmental legislation, absent bad faith, negligence or inaction, indicating abdication of its responsibilities, a court will be in a position to protect and harmonize all interests protected by the complex maze of environmental legislation and maintain an orderly progression of litigation arising therefrom. Such an approach will provide a judicial forum for any person to be heard concerning his particular *97 interests as opposed to the broad interests of the state. Cf. Bor. of Kenilworth v. Dept. of Transportation, 151 N.J. Super. 322 (App.Div. 1977), certif. den. 75 N.J. 541 (1977).
Turning to the instant case, some of the issues may be resolved here by application of the principles set forth above while others will have to be remanded for a hearing and factual determination consistent with these pronouncements.
Plaintiff Township contends that the trial court erred in ruling that DEP had exclusive authority to maintain enforcement proceedings of the administrative consent order since it was a signatory. We affirm the action of the trial court in dismissing that portion of the Township's suit.
Administrative consent orders under the Solid Waste Act and the Water Pollution Act may be issued only by the DEP. N.J.S.A. 13:1E-10; 58:10A-10. Thus the Township is not authorized to secure or issue such orders. Indeed, it is not authorized under the provisions of either Act to institute any enforcement proceedings whatsoever. A fortiori, they may not seek to enforce such orders even though they were invited to be a signatory. Additionally, the terms of the order in question specifically reserved only to the DEP the right to enforce it. Any right of the Township to seek relief for violation of the provisions of those two Acts necessarily would have to be based on the incorporative rights provided by the Environmental Rights Act as opposed to enforcement of the administrative consent order.
Plaintiff Board of Health contends that the trial court erroneously ruled that it lacked standing under the Solid Waste Act. It directs our attention to an express provision of that law indicating that "... a local board of health ... may institute an action or proceeding in the Superior Court for injunctive and other relief...." N.J.S.A. 13:1E-9b. Similarly, plaintiff Township challenges the action of the trial court in dismissing its complaint because it lacked standing to pursue any claims against WDI based on the provisions of the various environmental *98 statutes previously mentioned. In other words the Township and the Board of Health both seek to continue with their suits as a matter of absolute right and notwithstanding DEP's intervention and assumption of responsibility to enforce the laws in question.
With respect to these claims we reverse and remand to the trial court to determine whether these actions by either of these plaintiffs or both may be maintained in view of the principles heretofore discussed. For example, should the trial court determine that DEP has adequately, fairly and fully enforced the statutory requirements against WDI including the various reliefs authorized thereby, with due regard for the special local interests of the Township and the Board of Health, the court may determine to reenter its judgments of dismissal. On the other hand, the court may conclude that the DEP has not exhausted all reliefs and remedies which should be made available to either one or both plaintiffs and that the goals of that legislation would be served better by allowing them to continue with some portion of the suit. Or it may determine that DEP has not fairly and adequately considered and protected the rights and peculiar interests of the Board of Health or the Township in their representative capacities in its settlement with WDI. In such case it may fashion an order allowing them to proceed on a limited basis. In sum, the trial court must first ascertain the extent of the violations alleged and the adequacy and reasonableness of remedial action being pursued and contemplated by DEP before it may compel these plaintiffs to forego their right to sue.
Lastly, we address the contention by the Township that the trial court erroneously dismissed their claims based on so-called common law rights of strict liability, nuisance and negligence. We affirm that dismissal.
In State, Dept. of Environ. Protect. v. Ventron Corp., 94 N.J. 473, 488 (1983), our Supreme Court held that a "... landowner is strictly liable to others for harm caused by *99 toxic wastes that are stored on his property and flow onto the property of others." Thus, "... those who use, or permit others to use, land for the conduct of abnormally dangerous activities are strictly liable for resultant damages." Ibid. The Township's reliance on this case is not well placed since the state's standing to pursue common law strict liability and public nuisance claims in that case was upheld specifically because the state itself was the owner in fee of Berry's Creek, the tide-flowed estuary which had been damaged. Here the Township does not assert any claim of an ownership interest in the lands or waterways which may have been damaged by pollutants discharged from the WDI landfill. It appears that whatever interest the Township seeks to protect is an indirect one on behalf of the Township's citizenry and which it may otherwise do adequately through enforcement of statutory rights as outlined above. Such result is in accord with the general common law rule that a public nuisance is abatable only by a suit brought by the Attorney General on behalf of the State or by an individual who sustains special damage over and above that suffered by the general public. Mayor, & c., of Alpine Borough v. Brewster, 7 N.J. 42, 52 (1951); Colon v. Tedesco, 125 N.J.Super 446, 455-456 (Law Div. 1973). Cf. Newark Health & Welfare Dep't v. Rogers, 179 N.J. Super. 389, 396 (Ch.Div. 1981) (where the Board of Health did not pursue its claim in the name of the state as required by N.J.S.A. 26:3-56). Nor does the Environmental Rights Act confer standing on the Township to pursue its common law claims. N.J.S.A. 2A:35A-4b grants a "person" standing to maintain an action for declaratory and equitable relief for the protection of the environment only in those instances where no statute, regulation or ordinance establishes a specific standard for environmental controls. As noted, there are various statutes available in the instant matter which establish specific standards such as the Solid Waste Act, the Water Pollution Act and the Spill Act. N.J.S.A. 2A:35A-4b would not grant the Township standing to maintain an action for declaratory and equitable relief on common law grounds.
*100 Finally, plaintiff Township's contention that the trial court committed plain error in not granting its application to intervene is patently without merit. R. 2:11-3(e)(1)(E). It does not appear that any such motion was ever made to the trial court and in any event, the foregoing discussion is dispositive of its right to intervene under R. 4:33-3.
Except for those aspects of the trial court's order which we have affirmed specifically herein, we reverse and remand for the trial court's reconsideration in light of the principles elucidated here. We do not retain jurisdiction.
NOTES
[1] This complaint also listed the Monmouth County Board of Chosen Freeholders and the DEP as defendants. However, plaintiffs' action against these two entities was dismissed voluntarily.