260 N.J. Super. 570 (1992)
617 A.2d 291
MORRIS COUNTY TRANSFER STATION, INC., PLAINTIFF-APPELLANT,
v.
FRANK'S SANITATION SERVICE, INC.; AMERICAN RESOURCE RECOVERY, INC.; PAN AUTOMOTIVE PARTS AND SUPPLY, INC.; MICHAEL DIMARCO, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted October 6, 1992.
Decided December 11, 1992.
*572 Before Judges ANTELL, DREIER and SKILLMAN.
John K. Enright, attorney for appellant.
Pisacane, Anderson & Cahill, attorneys for respondents (Richard M. Pisacane, on the briefs).
Eugene P. Chell and Riker, Danzig, Scherer, Hyland & Perretti, submitted a joint brief on behalf of amici curiae Gloucester County Improvement Authority and Wheelabrator Gloucester Company, L.P. (Michael R. Cole, Edward K. DeHope and Eugene P. Chell, of counsel; James C. Meyer, on the briefs).
The opinion of the court was delivered by ANTELL, P.J.A.D.
Plaintiff appeals by leave granted from an order of the Law Division denying its application for a preliminary injunction to restrain defendant Frank's Sanitation Service, Inc. (hereinafter "defendant") from diverting solid waste from plaintiff's transfer stations. The application for relief was made on the basis of common law equitable principles, the Solid Waste Utility Control Act, N.J.S.A. 48:13A-1, et seq., the Solid Waste Management Act, N.J.S.A. 13:1E-1, et seq., and the Environmental Rights Act, N.J.S.A. 2A:35-1, et seq. The Law Division denied relief on the ground that plaintiff failed to demonstrate threatened irreparable injury and failed to demonstrate its standing to invoke the statutory remedies aforementioned.
Plaintiff is the holder of a franchise awarded under N.J.S.A. 48:13A-5 in 1988 by the Board of Public Utilities (hereinafter "BPU"). The franchise gives plaintiff exclusive authority to dispose of all solid waste generated within Morris County. Plaintiff carries on its work through two transfer stations located in Mt. Olive and Parsippany-Troy Hills. A transfer station is a facility at which solid waste is transferred from a collection vehicle to a licensed solid waste haulage vehicle. The *573 solid waste is then transported to an offsite sanitary landfill facility for disposal. N.J.S.A. 48:13A-3.
Defendant, a licensed solid waste hauler, collects solid waste in Morris County, conducting its business from a garage located at 60 Riverdale Road, Riverdale, New Jersey. Defendant leases the garage from defendant Pan Automotive Parts and Supply, Inc. Pursuant to a waste flow order issued by the Department of Environmental Protection, now known as the Department of Environmental Protection and Energy (hereinafter "DEPE"), and the BPU, now merged with DEPE and functioning therein as the Board of Regulatory Commissioners, pursuant to N.J.A.C. 7:26-6.5, all solid waste generated and collected in Morris County is directed to plaintiff's two transfer stations.
In May 1988, plaintiff established an investigative unit to monitor compliance by Morris County solid waste haulers with the Morris County waste flow order. Plaintiff's employees maintained surveillances over defendant's collection routes and activities at its garage and yard in Riverdale. As a result, plaintiff determined that defendant had been diverting waste, which it collected in Morris County, to disposal facilities other than plaintiff's. Plaintiff alleges that during the preceding one and a half years, its enforcement unit has documented well over 150 instances of illegal diversion. It further alleges numerous instances in which the solid waste was delivered to defendant's own yard in Riverdale and, in some cases, thereafter taken to the Totowa Transfer Station in Passaic County.
On December 9, 1991, DEPE issued defendant a Notice of Violation for operating an illegal transfer station at its Riverdale yard. No further enforcement action has been taken by DEPE and, according to plaintiff, defendant continues to use its own facility as a transfer station.
Defendant's activities have caused plaintiff to lose revenue because tipping fees have been reduced. Tipping fees are normally paid by commercial haulers to plaintiff upon its acceptance *574 of solid waste for delivery to an out-of-state landfill. Because of defendant's actions the volume of waste plaintiff receives is reduced and defendant is not paying plaintiff the tipping fees that would be due if defendant were complying with the waste flow order.
Defendant does not challenge plaintiff's factual allegations. It asserts only that as a matter of law these fall short of supporting plaintiff's claim for injunctive relief.
The criteria governing the grant of a preliminary injunction are well known. These are: (1) a reasonable probability of success on the merits; (2) a settled legal right supporting the claim; (3) threatened irreparable harm; and (4) the relative hardship to the parties in granting or denying relief. Crowe v. DeGioia, 90 N.J. 126, 132-34, 447 A.2d 173 (1982). With these, of course, should be considered the rule that an injunction will not ordinarily issue where there is an adequate remedy at law.
There is little doubt as to the likelihood of success on the merits of plaintiff's claim. The undenied proofs clearly establish that defendant is engaging in a pattern of waste flow violations to plaintiff's detriment and in violation of plaintiff's settled legal right to protection from violation of its franchise.
It is settled that a franchise granted by the State in return for the performance of a public service, such as a public utility franchise, constitutes a property right. See, e.g., Frost v. Corporation Comm. of Oklahoma, 278 U.S. 515, 520, 49 S.Ct. 235, 237, 73 L.Ed. 483, 487 (1929); New York Electric Lines Co. v. Empire City Subway Co., 235 U.S. 179, 194, 35 S.Ct. 72, 76, 59 L.Ed. 184, 192 (1914); Monongahela Nav. Co. v. United States, 148 U.S. 312, 344-45, 13 S.Ct. 622, 633, 37 L.Ed. 463, 474 (1893). New Jersey decisions are to the same effect. See, e.g., Rar. & Del. Bay R.R. Co., et. al. v. Del. & Rar. Canal, et al., 18 N.J. Eq. 546, 570-71 (E. & A. 1867); Millville Gas Light Co. v. Vineland Light & Power Co., 72 N.J. Eq. 305, 307, 65 A. 504 (Ch. 1906); Jersey City Gas Co. v. Dwight, 29 N.J. Eq. 242, 249 (Ch. 1878). The violation of an exclusive franchise *575 entitles the franchise holder to an injunction. See, e.g., Elizabethtown Gas Light Co. v. Green, 46 N.J. Eq. 118, 123, 18 A. 844 (Ch. 1889), aff'd, 49 N.J. Eq. 329, 24 A. 560 (E. & A. 1892); Citizens Coach Co. v. Camden Horse R.R. Co., 33 N.J. Eq. 267, 282 (E. & A. 1880); Consolidated Traction Co. v. So. Orange and Maplewood Traction Co., 56 N.J. Eq. 569, 573, 40 A. 15 (Ch. 1898); Jersey City Gas Co. v. Dwight, supra, at 49. On this basis alone, plaintiff is entitled to the requested equitable relief.
The following observation by the BPU in its March 2, 1988, order awarding the franchise to plaintiff is also relevant:
While it is clear that waste flows can be enforced by the Board and the DEP pursuant to the redirection order, the award of a franchise is particularly important for the operator of a transfer station because it gives the franchise holder a standing to seek enforcement of its rights under the franchise through the Board and/or through the injunctive power of the courts.
The foregoing observation "is a reasonable interpretation that is consistent with our view of the Legislature's intent." See Snedeker v. Bd. of Review, Div. of Emp. Sec., 139 N.J. Super. 394, 402, 354 A.2d 331 (App.Div. 1976).
There are sound reasons to explain why irreparable damage is implicit in the violation of a utility's exclusive franchise so as to fortify plaintiff's right to an injunction. Once the violation occurs, the character of the franchise as an exclusive property right is destroyed. It is no answer to suggest that the franchisee may later be redressed by money damages. "The injury threatened by such an invasion is the impairment of the owner's business, for which there is no adequate remedy at law." Frost, supra, 278 U.S. at 521, 49 S.Ct. at 237, 73 L.Ed. at 488. Nor can we say that the franchisee may respond to its injury by cutting back on service. It has an obligation as a public utility to serve the public in accordance with regulatory orders. N.J.S.A. 48:2-23; N.J.S.A. 48:3-3.
Additionally, money damages in all likelihood can not be an adequate remedy since it would be practically impossible to document and prosecute every waste flow violation. As plaintiff *576 correctly states, a franchisee may never know how much solid waste has been diverted from its facility.
Furthermore, the losses incurred by plaintiff go beyond the tipping fees which would have been received from defendant. The per ton tariff rates of a solid waste utility are fixed by the regulatory agency, so that sufficient revenue is generated, based on tonnage expectations, to cover the expense of debt service and operating costs. Where these tonnage expectations are not fulfilled, plaintiff cannot, without regulatory approval, raise the fees charged to other haulers. Also, if defendant's illegal activities are not enjoined, other haulers will be encouraged to follow defendant's example, thus undermining plaintiff's waste flow enforcement program.
Important too in our analysis is the fact that plaintiff's franchise was awarded on the finding "that the public interest requires" it. N.J.S.A. 48:13A-5a. In making its award, therefore, the agency determined that plaintiff would be able to handle the solid waste committed to its care in an environmentally secure manner and with maximum economic efficiency. Against this background, defendant's diversion of solid waste from plaintiff's facility amounts to a direct assault upon the State's legislative and administrative program for the safe disposal of solid waste in the interest of a clean and safe environment. Since there is no way of knowing where the diverted waste is being carted, the interest of the general public and the protection of the environment is under constant threat so long as defendants operate their garage as an illegal transfer station and continue to divert waste from lawfully designated facilities. The potential for environmental pollution is evident.
We conclude that the doctrine of relative hardships clearly favors plaintiff. As we have explained, allowing defendant to continue its violations threatens serious harm to plaintiff and the public. The effect of a preliminary injunction amounts to *577 nothing more than an obligation for defendant to carry on its business in a lawful manner.
We also conclude that the Environmental Rights Act provides an alternative basis for relief, at least insofar as plaintiff alleges defendant has been utilizing its yard in Riverdale as an illegal transfer station in violation of N.J.S.A. 13:1E-26. See In the Matter of Recycling & Salvage Corp., 246 N.J. Super. 79, 91, 586 A.2d 1300 (App.Div. 1991). Under the Environmental Rights Act, private parties may enforce laws regarding the "pollution, impairment or destruction of the environment," N.J.S.A. 2A:35A-4a, which includes "improper disposal of refuse," N.J.S.A. 2A:35A-3b. An exception to the exercise of such rights is "where the conduct complained of constitutes a violation of a statute, regulation or ordinance which establishes a more specific standard for the control of pollution, impairment or destruction of the environment." N.J.S.A. 2A:35A-4b.
The trial court concluded that N.J.S.A. 2A:35A-4b denied plaintiff recourse to the Environmental Rights Act because the Solid Waste Management Act at N.J.S.A. 13:1E-9 sets out the appropriate mechanism for dealing with solid waste disposal violations, including the illegal operation of a transfer station, N.J.S.A. 13:1E-9g. It reasoned that under the Solid Waste Management Act, DEPE and other local government agencies are exclusively charged with its enforcement. However, in Township of Howell v. Waste Disposal, Inc., 207 N.J. Super. 80, 504 A.2d 19 (App.Div. 1986), we concluded that the Environmental Rights Act can also be used to supplement actions the government has taken. Our determination was expressed in the following language:
We believe that the determination of whether DEP, in a given situation, has exercised properly its preemptive jurisdiction should be resolved by the court when it is asserted that, DEP has failed in its mission, neglected to take action essential to fulfill an obvious legislative purpose, or where it has not given adequate and fair consideration to local or individual interests. In other words where the state agency has failed or neglected to act in the best interest of the citizenry or has arbitrarily, capriciously or unreasonably acted, then a court *578 should permit interested persons to continue with enforcement under the Environmental Rights Act.
Id., 207 N.J. Super. at 96, 504 A.2d 19.
In support of its contention that DEPE's enforcement is not adequate, plaintiff submitted a certification by the supervisor of its investigative unit explaining that, based on his knowledge of administrative proceedings, it may take as long as three years for the agency to address defendant's violations. Plaintiff also points out that although DEPE issued a violation notice to defendant in December 1991, two months later defendant was still operating the illegal facility and no further enforcement measures had been taken. Plaintiff further states that it filed a notice of intention with DEPE more than thirty days before filing suit, as required under N.J.S.A. 2A:35A-11, and sent a copy of the complaint to the State's environmental prosecutor. Apparently, the State has not objected to plaintiff's action and has not sought to intervene. In Township of Howell, supra, at 95, 504 A.2d 19 we wrote that
this notice requirement was designed to allow that agency [DEP] to exercise value judgments in individual cases, e.g., whether it will join in that litigation or enforcement proceeding, whether other actions it may have taken already with respect to the particular problem or offender would render the litigation subject to collateral estoppel or res judicata principles, whether its expertise would assist the court, whether broad State interests would be sacrificed unduly to regional or personal interests by the instigators of that litigation, etc. Obviously, if the DEP expresses no interest and elects not to join that action, in the absence of a court ordering it to be made a party, as occurred here, (R. 4:28-1), the action may proceed in accordance with the rights accorded in the Environmental Rights Act. [Emphasis ours.]
The Law Division's order of March 18, 1992, denying plaintiff's application for a preliminary injunction is reversed. It is directed that an order issue enjoining defendant from diverting solid waste collected in Morris County from plaintiff's transfer stations pending final hearing and determination of the cause.