**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1956-21
A-2983-21

TOWNSHIP OF WEST
CALDWELL,

 Plaintiff-Appellant/
 Cross-Respondent,

v.

CARANT LIMITED PARTNERSHIP,
and ANTHONY PIO COSTA, III, as
controlling partner in CARANT
LIMITED PARTNERSHIP,
and individually,

 Defendants-Respondents/
 Cross-Appellants.

_____

CARANT LIMITED PARTNERSHIP,
and ANTHONY PIO COSTA, III,

 Plaintiffs-Respondents,

v.

ESSEX COUNTY CONSTRUCTION
BOARD OF APPEALS, and ESSEX
COUNTY DEPARTMENT OF

HEALTH,

      Defendants-Respondents,

and

ROBERT MCLOUGHLIN,
Construction Official for the
TOWNSHIP OF WEST CALDWELL,
and TOWNSHIP OF WEST
CALDWELL,

      Defendants-Appellants.
_____

Submitted November 8, 2023 – Decided December 15, 2023

Before Judges Whipple, Mayer and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket Nos. L-5584-19 and L-5800-20.

Antonelli Kantor, PC, attorneys for appellant (Daniel Antonelli, Lori D. Reynolds, and Emily Bayard, on the briefs).

Connell Foley, LLP, attorneys for respondents/cross-appellants Carant Limited Partnership and Anthony Pio Costa, III (Richard P. DeAngelis, Jr., of counsel and on the briefs).

PER CURIAM

These consolidated appeals arise from two actions. In the first matter, plaintiff Township of West Caldwell (Township) challenges two orders dated

November 12, 2021. One order awarded defendants Carant Limited Partnership (Carant) and Anthony Pio Costa, III (collectively defendants) summary judgment in an action under the Environmental Rights Act (ERA), N.J.S.A. 2A:35A-1 to -14; the second order denied the Township's cross-motion for summary judgment. In their cross-appeal, defendants challenge a January 13, 2022 order denying their motion for counsel fees.

In the second action—a prerogative writs (PW) action filed by defendants against the Township and defendant Robert McLoughlin,[1] in his official capacity as Construction Official for the Township (Township defendants)—the Township appeals from two orders dated April 14, 2022. The first order vacated a portion of a February 23, 2022 order awarding the Township defendants relief on their counterclaim; the second order denied the Township defendants' cross-motion to enforce the February 23 order. We affirm all challenged orders.

I.

Carant is a New Jersey limited partnership and owns Lots 2 and 10 in Block 1700 (the Property), as shown on the Township's Official Tax Map. Pio Costa has an ownership interest in Lot 2 through his partnership in Carant; he has a direct ownership interest in Lot 10. The Property lies in a "flood fringe"

---

[1] Robert McLoughlin is not involved in the PW appeal.

section of a flood hazard area (FHA) of the Passaic River, as defined by the New Jersey Department of Environmental Protection (DEP). Therefore, certain activities on the Property are regulated by the DEP.

In 2013, the Township's Planning Board adopted a Resolution approving Carant's application for construction of a new building on the Property, subject to certain conditions. Condition Seven in the Resolution provided:

> Any fill required or proposed to be placed on this site shall be tested and certified to be free of any contaminants, and the transportation and placement of same will be documented, all in accordance with the requirement of the Developer's Agreement [(DA)],[2] by professionals satisfactory to the Township and at the sole cost and expense of the Applicant.
>
> [(Emphasis added).]

In 2014, the DEP's Division of Land Use Regulation approved defendants' application for an FHA individual permit,[3] authorizing grading and construction on the Property. Pursuant to the parties' 2016 DA, Carant was allowed to begin site work on the Property as soon as it submitted certain permits and approvals. The DA also contained a provision mirroring the terms set forth under Condition

---

[2] The DA was executed between Carant and the Township's Mayor in 2016.

[3] Although the 2014 FHA permit was due to expire in 2019, it was extended to 2024.

Seven in the 2013 Resolution, including the language that any fill on the Property would have to be "certified to be free of any contaminants . . . by professionals satisfactory to the Township."

When site work commenced at the Property in 2016, defendants began grading, constructing a detention basin, and installing a pavement section. The pavement section included Belgian block curbing around the basin's perimeter and a four-inch-thick subbase containing dense graded aggregate (DGA). Carant's original plan called for a four-inch-thick stabilized base course of asphalt over the DGA, but instead, Carant applied approximately four inches of recycled asphalt millings (RAP) over the DGA. Carant advised the Township it secured the RAP from a contractor who performed a municipal road project in Bergen County, but it did not document the origin of the RAP, how it was transported, or the amount of RAP deposited on the Property.

On February 7, 2017, the DEP received a complaint about defendants' alleged "improper storage of asphalt millings" on the Property. The complaint was referred to the Essex County Department of Health (ECDH).[4] One week later, the ECDH issued a summons to Pio Costa, charging him with operating an

_____

[4] ECDH is the local enforcement agency under the County Environmental Health Act (CEHA). N.J.S.A. 26:3A2-21 to -38.

unauthorized landfill in violation of the Solid Waste Management Act (SWMA), N.J.S.A. 13:1E-1 to -230 and N.J.A.C. 7:26-2.8(e).[5]  After Pio Costa met with an ECDH representative to address the summons, the ECDH took no further action at that time.

The Township's Engineer, Kevin Boyer, P.E., inspected the Property in February 2017.  The next month, he issued a Compliance Review for the Township's Administrator of Planning and Zoning.  The Compliance Review did not refer to RAP being on the Property, although Boyer knew it remained on the site.

In March and April 2017, David Sumba, from the DEP's Bureau of Land Use Compliance and Enforcement, also inspected the Property.  Neither of Sumba's inspections resulted in a finding of a DEP violation.  Instead, Sumba concluded defendants' "development project . . . occurred in accordance w[ith] the FHA [Individual Permit] and no []DEP Land Use compliance issues were detected."

In May 2017, Carant's engineer, Frank Matarazzo, P.E., P.P., asked Boyer

---

[5]  N.J.A.C. 7:26-2.8(e) provides, in part:  "[n]o person shall engage or continue to engage . . . in the disposal of solid waste . . . without first having filed a completed application for and received approval of a [Solid Waste Facility (SWF)] [p]ermit."

6

to sign Carant's updated site plan, allowing Carant to secure construction permits.  Boyer signed the plan.

The next month, Pio Costa met with the Township's Construction Code Official to discuss the construction permits.  While Pio Costa was at the municipal building, the Township's Health Officer (THO) accused him of illegally placing RAP on the Property.  The THO also filed a complaint with the DEP in June 2017, claiming the Property contained "asphalt millings on a protected wetlands area[,] causing oil sheens to run off the unsealed millings." Additionally, the THO contacted the ECDH and alleged there were continuing DEP violations at the Property.  The ECDH issued a second summons, charging Pio Costa with continuing to allow RAP on the Property without an SWF permit, in violation of the SWMA and N.J.A.C. 7:26-2.8(e).  Pio Costa again met with an ECDH representative, and the ECDH took no further action on the second summons.

The DEP's Bureau of Land Use Compliance and Enforcement, and specifically, Sumba, reviewed the THO's June 2017 complaint and concluded there were no land use violations.  Sumba recommended the case be closed, and in June 2017, his supervisor approved the recommendation.

The next month, the Township's Construction Official, McLoughlin,

denied Carant's application for a foundation permit. McLoughlin based the denial on the fact Carant deposited undocumented asphalt millings as "fill" on the Property and the ECDH had issued summonses to Pio Costa due to the existence of RAP on the Property. Carant appealed from the denial and in November 2017, the Essex County Construction Board upheld the permit denial.

Carant subsequently retained William Canavan, a licensed site remediation professional, environmental consultant, and professional geologist. Canavan conducted a subsurface investigation of the RAP and concluded it did not cause any soil contamination or present a danger to human health or the environment.

In April 2018, defendants forwarded a copy of Canavan's report to the ECDH and the Township. The Township rejected the report, claiming Canavan's testing was deficient. It also advised it would hire its own environmental expert to address Canavan's findings. However, the Township waited more than a year later to submit an expert report from Girish Mehta, P.A., who criticized Canavan's methodologies. However, Mehta did not conclude the RAP on the Property caused contamination at the site or that the DEP needed to intervene. In the interim, the Legislature enacted N.J.S.A. 13:1E-99.28a, allowing the expanded use of recycled asphalt payment, subject to certain limitations,

effective October 1, 2018.[6]

In July 2019, the Township filed a five-count complaint under the ERA, alleging defendants violated: (1) the ERA (count one); (2) the SWMA (count two); (3) the CEHA and its implementing regulations, including N.J.A.C. 7:26-2.8(e), N.J.A.C. 7:26-2.8(f), N.J.A.C. 7:26-2.11(c)(1), and N.J.A.C. 7:26-2.11(b)(3) (count three); (4) FHA control rules, based on defendants' failure to apply for a permit from the DEP "for the placement and storage of asphalt millings," contrary to N.J.A.C. 7:13-12.20(c) (count four); and (5) 18A-11.2a of the Township's Revised General Ordinances, due to defendants' failure "to provide documentation as to the transportation and placement of the asphalt millings . . . on the [P]roperty," and "to satisfy the Township that the asphalt millings [we]re certified to be free of any contaminants" (count five). Prior to filing the ERA complaint, the Township did not seek access to the Property to conduct any testing, nor did it provide any documentation to defendants to show the RAP caused soil or groundwater contamination or jeopardized the public's health or safety.

Contemporaneous with the filing of the Township's complaint, Carant's engineer, Matarazzo, asked an engineering supervisor from the DEP's Division

---

[6] Defendants concede N.J.S.A. 13:1E-99.28a was not given retroactive effect.

of Land Use Regulation if Carant needed an amended FHA permit to account for the RAP. The supervisor advised no modification to Carant's FHA permit was necessary.

In August 2020, Carant filed a PW complaint against the Township defendants, alleging their denial of Carant's construction permit was arbitrary, capricious, and unreasonable. Carant also named the ECDH as a party defendant to the action.

The Township defendants filed an answer and counterclaim to Carant's PW complaint, alleging facts similar to those set forth in the Township's ERA complaint. In fact, they asserted the same five causes of action in their counterclaim as set forth in the Township's ERA complaint, including that Carant violated the ERA, the SWMA, the CEHA, N.J.A.C. 7:13-12.20(c) and 18A-11.2a of the Township's Revised General Ordinances.

In December 2020, Carant and the ECDH entered into a consent order. Under the terms of the consent order, the ECDH agreed to dismiss with prejudice its two pending summonses against Carant, and Carant agreed to dismiss the ECDH as a party defendant in the PW action.

Following discovery, Carant moved for summary judgment in the ERA action. At the Township's request, discovery was extended to allow the

A-1956-21

depositions of DEP officials, including Thomas Farrell, Bureau Chief of DEP's Bureau of Solid Waste Compliance and Enforcement. Thereafter, the Township filed opposition to Carant's summary judgment motion and cross-moved for summary judgment.

On November 12, 2021, Judge Jeffrey B. Beacham granted defendants' summary judgment motion and denied the Township's cross-motion. He issued two conforming orders that day.

In his oral opinion, Judge Beacham noted that when the Township's engineer visited the Property in February 2017 and "prepared a compliance review," the engineer "did not flag the [RAP] millings as a problem." Moreover, the judge pointed out that the Township's engineer "sign[ed Carant's] updated site plan on May 24[], 2017." Further, the judge found that when Sumba conducted site inspections on behalf of the DEP in March and April 2017, Sumba "did not identify any land use violations."

Additionally, the judge determined that when Carant's engineer asked the engineering supervisor at the DEP's Division of Land Use Regulations if Carant could use RAP "as a base course within a pavement section" on the Property, the supervisor "did not flag that doing so would require any additional permit applications." The judge also found defendants "engaged an environmental

11

testing service that conducted testing and recorded its findings in a March . . . 2018 report that the [RAP] millings did not cause any soil contamination or present a danger to human health or the environment."

Based on these findings, the judge initially addressed the second count of the Township's ERA complaint and determined defendants were entitled to summary judgment on this count because the Bureau Chief of DEP's Bureau of Solid Waste Compliance and Enforcement concluded defendants did not violate the SWMA. Likewise, the judge granted defendants summary judgment on count three of the Township's ERA complaint, finding no proof Carant violated the CEHA. The judge added, "the evidence in the record [wa]s that the RAP [was] not currently solid waste" and "[f]urthermore, . . . the [CEHA] does not establish substantive environmental law to independently support an [ERA] claim. Therefore, . . . count three is dismissed."

Regarding count four of the Township's ERA complaint, Judge Beacham noted this count "allege[d] a violation of N.J.A.C. 7:13-12.20C," which "requires an individual permit for solid waste, for recyclable materials placed, stored[,] and[/]or processed in a regulated area." He explained, "in the absence of evidence of actual contamination, the [Township] b[ore] the burden of demonstrating . . . there was a compliance action that defendants could and

A-1956-21

should have taken to comply with the regulation." The judge concluded the Township failed to identify "which office within the [DEP] would process" such an application, and it had not "convincingly rebutted the evidence in the record that multiple [DEP] officials in both the Land Use and Solid Waste Compliance Offices" determined defendants needed no additional permit. To further support his decision to grant defendants summary judgment on count four of the ERA complaint, the judge reiterated that the Township's engineer "took no action" after he inspected the Property and "noticed the milling," and that the DEP's engineering supervisor also informed defendants "no modifications would be necessary for the [FHA] permit" after defendants asked about using RAP on the Property.

Next, Judge Beacham found defendants "made a good faith effort . . . to comply with all applicable environmental requirements" and had "engag[ed] an environmental testing specialist[] of their own accord, [who] found no contamination." He also concluded the Township failed to "produce[] any evidence of environmental harm" or seek "access to the . . . [P]roperty . . . to conduct its own environmental testing. Rather, the [Township]'s environmental consultant[, Mehta,] only evaluated the method used by . . . [defendants'] consultant," Canavan. Accordingly, Judge Beacham granted defendants

13

summary judgment on count four, finding that "principles of equity and justice compel[led] a finding" in their favor.

Turning to count five of the Township's ERA complaint, which alleged defendants violated Ordinance 18-A, the judge cited N.J.S.A. 2A:35A-4,[7] and noted that the parties disputed whether this ordinance, "pertaining to land use and the issue of development permits," was "designed to prevent or minimize pollution[, impairment,] or destruction of the environment." The judge concluded that "the ordinance appear[ed] to be within the ambit of the [ERA]." However, he also found the Township's ordinance failed to set forth "any objective criteria for how defendants could [satisfy] Condition 7, [meaning] that the fill [wa]s free of contaminants," because, "as . . . Farrell [from the Bureau of Solid Waste Compliance Enforcement] stated, by the very nature of asphalt, it's contaminated." The judge further explained:

> In place of identifying the kind of objective standard that could furnish the basis for making out a prima facie case for an [ERA] action, the [Township] has rather stated that Condition 7 can only be complied

---

[7] This section of the ERA provides, in part:

> Any person may commence a civil action . . . against any other person alleged to be in violation of any statute, regulation or ordinance which is designed to prevent or minimize pollution, impairment[,] or destruction of the environment.

14

with if the Township is satisfied, without providing external, objective standards for reference.

As such, Condition 7 of the Resolution cannot support an [ERA] claim as a matter of law and summary judgment for the defendants is granted . . . .

Finally, in addressing count one of the Township's ERA complaint, Judge Beacham stated:

Because summary judgment is granted for the defendants on all of the substantive statutes, regulations[,] and ordinances in question[,] and because the [Township] has not independently demonstrated that . . . defendants are causing pollution, impairment or destruction of the environment, summary judgment is also granted for the defendants [on] count one, which generally alleges the violation of the [ERA,] and the [Township's] cross[-]motion for summary judgment is denied.

Therefore, the [Township]'s case is dismissed in its entirety with prejudice.

On January 13, 2022, Judge Beacham heard argument on defendants' motion for counsel fees under the ERA, specifically, N.J.S.A. 2A:35-10(a),[8] as

---

[8] N.J.S.A. 2A:35A-10(a) states:

In any action under this act <u>the court may</u> in appropriate cases <u>award to the prevailing party reasonable counsel and expert witness fees</u>, but not to exceed a total of $50,000 in an action brought against a local agency or the [DEP], where the prevailing party achieved

15

well as the Frivolous Litigation Statute, N.J.S.A. 2A:15-59.1. Following argument, he orally denied the motion and entered a conforming order that day. The judge explained the denial, noting that when the Township initiated the ERA litigation, the ECDH had already issued summonses to defendants for storing RAP on the Property "without the requisite authorizations." Further, he found the Township "did not act unreasonably in bringing [an] ERA claim [considering] . . . defendant[s'] noncompliance with N.J.A.C. [7:13-12.20(c)]," and the fact that RAP was "placed, stored, and/or processed on the" Property.

Next, the judge acknowledged the Township did not prevail in the ERA action but concluded that was because "the law required . . . defendants to obtain a permit for the described usage" and the Township provided no "mechanism for obtaining the permit." Thus, he found that "even though [the Township] was ultimately unsuccessful, [it] did not act unreasonably or frivolously" in pursuing its various claims under the ERA.

---

reasonable success on the merits. The fees shall be based on the number of hours reasonably spent and a reasonable hourly rate for the counsel or expert in the action[,] taking into account the prevailing rate in the venue of the action and the skill and experience of the counsel or expert.

[(Emphasis added).]

Judge Beacham also rejected defendants' argument that they should be awarded fees under the Frivolous Litigation Statute, finding the Township "had a reasonable basis" for pursuing its claims under the ERA and defendants failed to "furnish[] any specific evidence showing" the Township "commenced, or continued [the litigation] in bad faith." Further, the judge found defendants failed to show the Township "knew or should have known that the [ERA] complaint . . . was without any reasonable basis in law or equity and could not be supported by a good faith argument."

II.

On February 18, 2022, a different judge, who presided over the PW trial, issued an oral opinion, dismissing the complaint filed by Carant and Pio Costa and granting the Township defendants relief on their counterclaim. In conjunction with this decision, he ordered Carant to immediately: "apply to the []DEP for a permit to remove the RAP"; "remove the RAP after obtaining the appropriate permit from the DEP"; and "conduct testing to comply with the Township's conditions set forth in the [DA] and [R]esolution approving the application's conditions." In rendering his decision, the PW judge stated he "adopted" and relied on the "stipulated findings of fact" jointly submitted by the parties in July 2021. He entered a conforming order on February 23, 2022.

17

Defendants moved for reconsideration of the February 23 order to the extent it granted the Township defendants relief on their counterclaim. The Township defendants cross-moved to enforce the February 23 order. Following argument on April 14, 2022, the PW judge orally granted defendants' reconsideration motion. He explained counsel was "entitled to a more thorough decision" than the one underlying his February 23 order, and that he gave the Township defendants' counterclaim "somewhat short shrift in [his February 18 oral] opinion." The PW judge also stated reconsideration was appropriate because he was unaware of Judge Beacham's determinations in the ERA action when the PW judge issued his oral opinion and accompanying order in February 2022.

Next, the PW judge stated that after reading Judge Beacham's opinion, "as well as rereading the papers . . . [and] the opposition and the cross-motion papers in th[e] [ERA] matter," and noting Judge Beacham "found that there was no environmental issue," "no violation of the . . . ERA," and the RAP on the Property was "not contaminating the . . . environment," it was appropriate to "vacate the [February 23] order as to the [Township defendants'] counterclaim[]." The PW judge also expressed that although "Judge Beacham's opinion [wa]s not binding[,] . . . his opinion [was] well taken."

Additionally, the PW judge stated, "[t]he violations" he previously found defendants committed "with regard to the [DA] and the ordinance" were tethered to his concern that defendants "had . . . created an environmental issue."  But because Judge Beacham found "there [wa]s no environmental issue here," "[n]o violation of the [ERA] and . . . no violation of the [SWMA], nor of . . . the [CEHA], the [FHA] rule," or the "local ordinance," it was proper for the PW judge to reconsider the February 23 order.  The PW judge further explained:

> [T]he fundamental reason for [the Township's] ordinance [and] the [DA] . . . ha[d] to do with . . . ensur[ing] that [a property owner did not] have . . . a bunch of contaminated materials . . . [that would] contaminate the property and/or interfere with the water or any other environmental issues.
>
> . . . [B]asically, Judge Beacham concluded . . . there was not [an] environmental issue here and the [Township] did[ not] make its proofs.  So that being the case[,] . . . the factual basis of my decision on the counterclaim . . . was incorrect and . . . that is the reason why . . . I'm going to vacate [my] decision. . . . [T]here[ has] been a finding by another court . . . . [A]nother court has [determined] in an action between the parties [that was] fully litigated . . . whether there was an environmental [issue] . . . . [M]y opinion would therefore be inconsistent with that.
>
> And based upon that[,] . . . I'm going to vacate my prior order with regard to the counterclaim and deny the motion to enforce litigant's rights.

On April 14, 2022, the PW judge executed an order granting defendants' reconsideration motion and vacating that portion of his February 23, 2022 order according the Township defendants relief on their counterclaim; he entered a second order denying the Township defendants' cross-motion for enforcement.

III.

In its appeal from Judge Beacham's November 21, 2021 orders in the ERA action, the Township first contends the judge mistakenly granted defendants' summary judgment motion and erred in denying its cross-motion for summary judgment. It further argues Judge Beacham did not follow "the plain and unambiguous language of N.J.S.A. 2A:35A-4(a),"[9] and thus, wrongfully

---

[9] N.J.S.A. 2A:35A-4(a) states, in part:

> Any person may commence a civil action . . . against any other person alleged to be in violation of any statute, regulation[,] or ordinance which is designed to prevent or minimize pollution, impairment[,] or destruction of the environment. The action may be for injunctive or other equitable relief to compel compliance with a statute, regulation[,] or ordinance, or to assess civil penalties for the violation as provided by law. The action may be commenced upon an allegation that a person is in violation, either continuously or intermittently, of a statute, regulation[,] or ordinance, and that there is a likelihood that the violation will recur in the future.

dismissed count one of the ERA action, despite the fact the statute "does not require demonstration of environmental harm when there is a continuing violation of a statute, regulation[,] or ordinance which is designed to prevent or minimize pollution, impairment[,] or destruction of the environment."

Next, the Township argues Judge Beacham's dismissal of the second count was "based on erroneous factual assumptions." Additionally, it contends the judge erred in dismissing count four of its ERA complaint, contrary to N.J.S.A. 2A:35A-4.a, because: (1) "the Township was not required to demonstrate the existence of an environmental harm"; and (2) "the Township provided sufficient evidence to [either] establish [defendants] were required to obtain an additional permit" or "to create a material issue of fact to defeat [defendants]' request for relief." Further, the Township argues it was entitled to summary judgment on count five and that "principles of equity and justice compel[led] a finding" in its favor.

In their cross-appeal from the January 18, 2022 order in the ERA action, defendants simply argue they were entitled to a counsel fee award because they were "the prevailing party in the ERA action."

---

[N.J.S.A. 2A:35A-4(a).]

Regarding the Township's appeal in the PW action from the April 14, 2022 orders, the Township contends the PW judge erred in: (1) granting defendants' reconsideration motion; (2) vacating portions of the February 23, 2022 order; (3) denying its enforcement motion; and (4) relying on Judge Beacham's decision to dispose of the PW action. Finally, the Township contends the PW judge's initial grant of relief on its counterclaim was proper, considering "the facts pled and proofs presented at trial."

The parties' arguments are unavailing.

We begin with the standards that guide our analysis. As a threshold matter, we note that "an issue not briefed is deemed waived." Pressler and Verneiro, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2023). Therefore, because defendants failed to include in their merits brief any argument regarding their counsel fee claim under N.J.S.A. 2A:15-59.1, this argument is waived.

Next, we recognize we must defer "to the trial court's factual findings . . . 'when [they are] supported by adequate, substantial and credible evidence.'" Zaman v. Felton, 219 N.J. 199, 215 (2014) (omission in original) (quoting Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)). However, we review de novo the "trial court's interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty L.P. v. Twp.

Comm. of Manalapan, 140 N.J. 366, 378 (1995).

We also "review a grant of summary judgment de novo, applying the same standard as the trial court." Norman Int'l, Inc. v. Admiral Ins. Co., 251 N.J. 538, 549 (2022) (quoting Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019)). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

Additionally, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995). "If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)).

It is also well settled that "a trial court's reconsideration decision will be

left undisturbed unless it represents a clear abuse of discretion." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

Reconsideration is appropriate in two circumstances: (1) when the court's decision is "based upon a palpably incorrect or irrational basis," or (2) when "it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 393, 401 (Ch. Div. 1990)).

An award of attorney's fees also "rest[s] within the discretion of the trial judge." McGowan v. O'Rourke, 391 N.J. Super. 502, 508 (App. Div. 2007). Therefore, "a reviewing court will disturb a trial court's award of counsel fees 'only on the rarest of occasions, and then only because of a clear abuse of discretion.'" Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)).

"In general, New Jersey disfavors the shifting of attorneys' fees."  Litton Indus., Inc., 200 N.J. at 385.  However, "a prevailing party can recover those fees if they are expressly provided for by statute, court rule, or contract." Packard-Bamberger & Co., 167 N.J. at 440; see also R. 4:42-9 and Brunt v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 357, 363 (App. Div. 2018).

As Judge Beacham noted, the ERA provides a fee shifting mechanism under N.J.S.A. 2A:35A-10(a) to benefit a prevailing party.  Because this statute provides "that 'the court may in appropriate cases' award counsel fees, the statute implies some discretion."  Patterson v. Vernon Twp. Council, 386 N.J. Super. 329, 331 (App. Div. 2006) (emphasis added) (quoting N.J.S.A. 2A:35A-10(a)). A party seeking counsel fees under N.J.S.A. 2A:35A-10(a) must not only show they were "the prevailing party" in an ERA action, but also that a counsel fee award is "appropriate."  See Girandola v. Allentown, 208 N.J. Super. 437, 442-443 (App. Div 1986).

Pertinent to the Township's appeal from the November 12, 2021 orders, we also observe that the ERA "creates a private cause of action for declaratory and injunctive relief to protect the environment against 'pollution, impairment and destruction.'"  Patterson, 386 N.J. Super. at 330-31 (quoting N.J.S.A. 2A:35A-2 and -4).  But the ERA only "grants a private person standing to

25

enforce an environmental protection statute as an alternative to inaction by the government[,] which retains primary prosecutorial responsibility. [The] ERA does not itself provide any substantive cause of action." N.J. Dep't of Env't Prot. v. Exxon Mobil Corp., 453 N.J. Super. 272, 293 (App. Div. 2018) (quoting Superior Air Prods. Co. v. NL Indus., Inc., 216 N.J. Super. 46, 58 (App. Div. 1987)); see also Port of Monmouth Dev. Corp. v. Middletown Twp., 229 N.J. Super. 445, 451 (App. Div. 1988) (confirming an ERA action was permitted when the DEP failed to act effectively).

"There are . . . limits" on a private cause of action under the ERA because the "DEP 'must normally be free to determine what solution will best resolve a problem on a state or regional basis[,] given its expertise and ability to view those problems and solutions broadly.'" Exxon Mobil Corp., 453 N.J. Super. at 294 (quoting Twp. of Howell v. Waste Disposal, Inc., 207 N.J. Super. 80, 95-96 (App. Div. 1986)). In fact, "it is clear that the legislature . . . entrusted to the DEP primary and supervisory enforcement powers under the [ERA and subsequent] environmental protection legislation." Howell, 207 N.J. Super. at 94 (emphasis in original). Further, the ERA "was structured deliberately to . . . not . . . sacrifice the paramount right of the state to control such action through its delegated agency." Id. at 93.

The ERA "also recognizes that multiple and vexatious litigation should not be tolerated.  To that end[,] it provides the courts should apply the 'doctrines of collateral estoppel and res judicata . . . to prevent multiplicity of suits.'"  Id. at 93-94 (omission in original) (quoting N.J.S.A. 2A:35A-10(b)).

"Section 4 of the ERA creates a private cause of action under two significantly different circumstances.  Section 4a allows an action alleging a violation of an existing 'statute, regulation or ordinance,'" whereas "Section 4b allows an action for equitable relief in those circumstances where no specific violation of a statutory or regulatory standard can be alleged, but environmental harm . . . is allegedly threatened."  Patterson, 386 N.J. Super. at 332.  Based on Judge Beacham's comments from his oral opinion, it is evident he fully understood these distinctions.

Next, we observe that "[a] certified local health agency may initiate legal proceedings for a violation of any environmental health law, rule, regulation, or ordinance, including the making and issuing of complaints and summonses by serving the summons upon the violator and filing the complaint promptly with a court having jurisdiction."  N.J.S.A. 26:3A2-25.  However, the "grant of enforcement rights to local health authorities was conditioned specifically upon a requirement that it 'conform' to the '[CEHA],'" and "[a] review of [the CEHA]

27

quickly reveals a legislative intent that any local enforcement of . . . solid waste or water pollution laws must be done in a manner 'consistent with certain overall performance standards' established by [the] DEP." Howell, 207 N.J. Super. at 91 (first quoting N.J.S.A. 26:3A2-21, then quoting N.J.S.A. 26:3A2-22).

Next, regarding the Township's appeal from the April 14, 2022 orders in the PW action, we note that a trial judge is permitted to take judicial notice of certain facts not in evidence under N.J.R.E. 201(b). In fact, the Rule allows for judicial notice of: "records of the court in which the action is pending and of any other court of this state or federal court sitting for this state." N.J.R.E. 201(b)(4).

Finally, our review of a res judicata decision is de novo. Selective Ins. Co. v. McAllister, 327 N.J. Super. 168, 173 (App. Div. 2000). "The term 'res judicata' refers broadly to the common-law doctrine barring re[-]litigation of claims or issues that have already been adjudicated." Velasquez v. Franz, 123 N.J. 498, 505 (1991). "In essence, the doctrine of res judicata provides that a cause of action between parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be relitigated by those parties or their privies in a new proceeding." Ibid.

"For a judicial decision to be accorded res judicata effect, it must be a valid and final adjudication on the merits of the claim." Id. at 506. "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Id. at 506 (quoting Restatement (Second) of Judgments § 27 (1982)).

Governed by these standards, and considering Judge Beacham's fulsome analysis of the parties' ERA claims, as well as his acknowledgement of the DEP's active involvement in investigating complaints arising from defendants' use of the Property, we discern no basis to disturb his challenged orders. Similarly, we have no reason to reverse the April 14, 2022 orders entered by the PW judge in reliance on Judge Beacham's decisions. Accordingly, we affirm the challenged orders substantially for the reasons outlined in the respective judges' thoughtful oral opinions.

To the extent we have not addressed any remaining arguments of the parties, we are persuaded they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

29

A-1956-21