NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 15-2886

_____

In re:  THE FLINTKOTE COMPANY AND FLINTKOTE MINES LIMITED,

Debtors

8 E. Frederick Place, LLC,

Appellant

_____

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-12-cv-01176)
District Judge: Honorable Leonard P. Stark

_____

Argued June 16, 2016

Before: AMBRO, NYGAARD, and VAN ANTWERPEN♦, Circuit Judges

(Opinion filed: July 26, 2016)

L. John Bird, Esquire
Fox Rothschild
919 North Market Street, Suite 1300
Wilmington, DE  19801

Jeffrey M. Pollack, Esquire          (Argued)
Fox Rothschild
997 Lenox Drive

_____

♦ The Honorable Franklin S. Van Antwerpen participated in the decision in this case.  He passed away on July 25, 2016 prior to the filing of the Court's opinion.  This opinion is thus filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d) and Third Circuit I.O.P. Chapter 12.

Princeton Pike Corporate Center, Building 3
Lawrenceville, NJ 08648

      Counsel for Appellant

Jonathan F. Cohn, Esquire
Brian P. Morrissey, Esquire       (Argued)
Sidley Austin
1501 K Street, N.W.
Washington, DC 20005

Anna M. Gumport, Esquire
Jeremy E. Rosenthal, Esquire
Sidley Austin
555 West 5th Street, Suite 4000
Los Angeles, CA 90013

Laura D. Jones, Esquire
James E. O'Neill, III, Esquire
Pachulski, Stang, Ziehl & Jones
919 North Market Street
P.O. Box 8705, 17th Floor
Wilmington, DE 19801

      Counsel for Appellees

————————————

OPINION[*]

————————————

AMBRO, <u>Circuit Judge</u>

Flintkote Company and Flintkote Mines Ltd. (collectively, "Flintkote") owned the

property at 8 E. Frederick Place over 40 years ago. After Flintkote declared bankruptcy,

Appellant 8 E. Frederick Place, LLC ("Frederick), the current owner of the property, filed

a claim in Bankruptcy Court raising environmental concerns. Specifically, Frederick

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

alleged that Flintkote had not done enough to clean up contamination at the property. Later, Frederick sought permission from the Bankruptcy Court to file a lawsuit for injunctive relief in state court. It needed the Court's approval because Flintkote's bankruptcy petition triggered an automatic stay that, unless lifted, prevented Frederick from filing suit. The Bankruptcy Court (in 2012) and the District Court (in 2015) rejected Frederick's claim, denied the request to lift the stay, and granted summary judgment to Flintkote. Because we agree that Frederick's theory of liability against Flintkote is fatally flawed, we affirm.[1]

## I.

Flintkote owned the property, which is located in Cedar Knolls, New Jersey, from 1945 to 1972 and operated on it a rubber manufacturing and reprocessing facility. Flintkote sold the property to a third party in 1972, which in turn sold it to Frederick in 1984. In 1993, Frederick discovered a tar drum and a shallow layer of asphalt and tar on the property (the "Tarry Asphalt Area"). Flintkote has admitted that the "asphalt/tar materials may be present due to the disposal or spillage of these materials, or both, during the course of Flintkote's operations at the site." Joint Appendix ("JA") 71. It agreed to address the issue voluntarily with the oversight of the New Jersey Department of Environmental Protection ("NJDEP").

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 158(a) and 1334. We have jurisdiction per 28 U.S.C. § 158(d). "Because the District Court sat below as an appellate court, this Court conducts the same review of the Bankruptcy Court's order as did the District Court." *In re Telegroup, Inc.*, 281 F.3d 133, 136 (3d Cir. 2002). We review the grant of summary judgment *de novo*, *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995), and the denial of the motion to lift the automatic stay for abuse of discretion, *In re Wilson*, 116 F.3d 87, 89 (3d Cir. 1997).

Flintkote entered into a Memorandum of Agreement ("MOA") with the NJDEP in 1994 to investigate and remediate the property. Pursuant to the MOA, Flintkote, along with the NJDEP, identified several areas of potential environmental concern, including the Tarry Asphalt Area. As of the time of the Bankruptcy Court proceedings, Flintkote's environmental consultant, URS Corporation, had collected approximately 98 soil samples from 78 locations on the property and had drilled and sampled five groundwater monitoring wells. JA 203. URS also submitted various work plans, reports, and letters to the NJDEP to document its actions at the property. The NJDEP evaluated URS' progress, approving certain proposals, requiring modifications to others, and directing further investigations and remediation work. The NJDEP issued at least 14 letters to Flintkote between 1994 and 2011 regarding its progress toward remediation. *See* JA 486–534, 777–78. Because we are reviewing a grant of summary judgment from 2012, that year is the cutoff for our analysis.

From July–October 2011, at the NJDEP's direction and Frederick's request, URS performed remediation work in the Tarry Asphalt Area. JA 814. It reported to the NJDEP about the remediation efforts and the tests of that area that followed. JA 811–52. From the time of that remediation until the grant of summary judgment in 2012, the NJDEP did not express dissatisfaction with Flintkote's work or require further cleanup there. At the same time, it did not issue a no-action letter demonstrating that it was satisfied.

The current dispute dates back to 2004, when Flintkote filed for bankruptcy. This triggered an automatic stay of the "commencement or continuation" of certain actions and claims against it. 11 U.S.C. § 362(a)(1). In the aftermath of the petition, Frederick

4

filed a claim in Bankruptcy Court against Flintkote based on allegations that the cleanup was inadequate. Frederick argued that Flintkote violated a host of statutes, but the only request relevant to our appeal was for injunctive relief under New Jersey's Environmental Rights Act ("ERA"). After several years of litigation in the Bankruptcy Court, Frederick moved to lift the automatic stay so it could pursue an ERA lawsuit in New Jersey state court. It argued that it had a strong case and that "cause" existed for allowing it to sue. *See id.* § 362(d)(1).

The ERA permits citizens to bring suits for injunctive relief "to compel compliance" with New Jersey's environmental laws. N.J. Stat. Ann. § 2A:35A-4(a). However, it "does not itself provide any substantive cause of action." *Superior Air Prods. Co. v. NL Indus., Inc.*, 522 A.2d 1025, 1032 (N.J. Super. Ct. App. Div. 1987). Instead, it offers a way procedurally by which citizens may enjoin an ongoing violation of a state law. *Id.* Here Frederick is attempting to use the ERA to vindicate its rights under the New Jersey Spill Compensation and Control Act, N.J. Stat. Ann. § 58:10-23.11 *et seq.*, which regulates the discharge of hazardous substances. Both the Bankruptcy Court claim and the request to lift the automatic stay turn on the viability of Frederick's theory of liability.

There are, however, two threshold limitations to an ERA claim. First, citizen suits under the ERA are preempted unless the NJDEP "has failed or neglected to act in the best interest of the citizenry or has arbitrarily, capriciously or unreasonably acted." *Howell Twp. v. Waste Disposal, Inc.*, 504 A.2d 19, 27 (N.J. Super. Ct. App. Div. 1986). And second, the ERA permits injunctive relief only against parties that are "in violation, either continuously or intermittently, of a statute, regulation or ordinance," and only when

5

"there is a likelihood that the violation will recur in the future." N.J. Stat. Ann. § 2A:35A-4(a). The Bankruptcy Court concluded that Frederick failed both of these prerequisites. It therefore rejected Frederick's claim, denied the request to lift the stay, and granted summary judgment to Flintkote.[2] The District Court subsequently affirmed the judgment, though on narrower grounds.

## II.

Our inquiry essentially ends with the first threshold question: whether the NJDEP has abdicated its responsibility such that a citizen suit under the ERA is allowed. It has not. The undisputed facts in the record show that the NJDEP has actively supervised the cleanup of the property. As discussed, it sent Flintkote at least 14 letters during the relevant time period, called attention to deficiencies in the cleanup process, and directed further work. This oversight belies any allegations that the NJDEP has failed to act in the best interests of its constituents or that it has otherwise conducted its work in an arbitrary, capricious, or unreasonable manner.

Frederick argues that a New Jersey court has found under similar circumstances that delays by the NJDEP opened the door for a citizen suit for injunctive relief. *See Port of Monmouth Dev. Corp. v. Middletown Twp.*, 551 A.2d 1030 (N.J. Super. Ct. App. Div. 1988). In that case, the NJDEP gave the defendant a deadline, issued a notice of prosecution when that date had passed, and then let 11 years go by without enforcing compliance. *Id.* at 1032–33. Here, by contrast, the NJDEP was actively involved in

---

[2] The automatic stay is no longer in effect because the bankruptcy plan has been confirmed. However, post-confirmation injunctions continue to prevent Frederick from pursuing its ERA claim in state court.

supervising remediation of the Tarry Asphalt Area mere months before the Bankruptcy Court ruled. It is true that the cleanup efforts were ongoing for a long time—approximately 18 years—by the time the Court granted summary judgment. But Frederick has conceded that remediation efforts like this can take between 15 and 20 years. JA 288.

To counter this conclusion, Frederick relies on an expert report from 2008, referred to as the "Hochreiter Report," as evidence that there were gaps in Flintkote's remediation work. Frederick says that the Bankruptcy Court overlooked those gaps in granting summary judgment to Flintkote. However, the record shows that Flintkote undertook substantial cleanup efforts after 2008. The reliance on the Hochreiter Report overlooks this intervening progress. The question before the Bankruptcy Court was whether, as of 2012 when it granted summary judgment, the NJDEP was sufficiently engaged such that there was no private right of action for injunctive relief under the ERA. And we agree with that Court's resolution of the question.

* * * * *

In sum, the Bankruptcy Court properly concluded that Frederick's claim lacked merit due to the NJDEP's involvement. And because the claim was not viable, the Court did not abuse its discretion in denying Frederick's request to lift the automatic stay.[3] We therefore affirm.

---

[3] Because we agree with the Bankruptcy Court's resolution of the first threshold ERA question, we need not decide whether the other limitation—the need for a party to be "in violation, either continuously or intermittently, of a statute, regulation or ordinance" and

7

for there to be a "likelihood that the violation will recur in the future," N.J. Stat. Ann. § 2A:35A-4(a)—is satisfied.