**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2427-24

CARNEYS POINT TOWNSHIP,

    Plaintiff-Respondent,

v.

E.I. DUPONT DE NEMOURS
AND COMPANY, SHERYL A.
TELFORD, THE CHEMOURS
COMPANY, AND THE
CHEMOURS COMPANY FC, LLC,

    Defendants-Appellants.

_____

        Submitted October 28, 2025 – Decided December 2, 2025

        Before Judges Sumners and Susswein.

        On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Salem County, Docket No. L-0251-16.

        Ballard Spahr, LLP, attorneys for appellants E.I. DuPont de Nemours and Company, Inc., and Sheryl A. Telford (David Haworth and Casey G. Watkins, on the briefs).

Norris McLaughlin, PA, attorneys for appellants The Chemours Company and The Chemours Company FC, LLC (Kimbrilee M. Weber and Margaret Raymond-Flood, on the briefs).

Meyner and Landis, LLP, attorneys for respondent (Albert I. Telsey, on the brief).

PER CURIAM

This appeal arises from a lawsuit brought by plaintiff Carney's Point Township alleging the unlawful discharge of more than 100 million pounds of hazardous waste into the environment. Defendants E.I. DuPont, De Nemours and Company (DuPont); Sheryl A. Telford; the Chemours Company; and the Chemours Company FC, LLC appeal a November 5, 2024 Law Division order denying their motion for summary judgment. Defendants contend Carney's Point Township lacks standing to bring suit under the New Jersey Environmental Rights Act (ERA). Defendants also contend the trial court erred in denying their motion for summary judgment dismissal because there is no genuine issue of material fact in dispute. After reviewing the record in light of the governing legal principles, we affirm.

I.

We discern the following procedural history and pertinent facts from the record. In December 2016 plaintiff filed a complaint against DuPont and

2

Telford alleging violations of New Jersey environmental statutes, including the Industrial Site Recovery Act (ISRA), N.J.S.A. 13:1K-6 to -14. The complaint asserts standing pursuant to the ERA. Plaintiff alleges that DuPont discharged over 100 million pounds of hazardous waste into the environment surrounding the Chambers Works site. Plaintiff's expert calculated that the cleanup and remediation costs will exceed $1 billion.

Plaintiff's complaint further alleges that in 2014 and 2015, DuPont began a series of corporate transfers of its businesses and properties, including the Chambers Works site, to the Chemours Company and its subsidiaries, including Chemours FC, LLC. Plaintiff alleges that these transfers, or "spinoffs," triggered ISRA, which requires owners and operators of industrial property or businesses in New Jersey to clean up all hazardous substances and wastes they discharged into the environment prior to: (1) transferring the real property of the industrial establishment; (2) transferring the stock and non-real property assets of the industrial business; or (3) executing a merger agreement, among other triggers. Plaintiff alleges that DuPont failed to either remediate the Chambers Works site and the surrounding areas or, in the alternative, post the remediation funding source (RFS) prescribed by ISRA, which would allow

municipalities to petition the DEP to use that money to complete cleanup if remediation was not completed before the property transfer.

Plaintiff's complaint also alleges that Telford, Director of the DuPont Corporate Remediation Group during the period at issue, deliberately deceived the DEP to undermine ISRA. Plaintiff seeks individual statutory penalties against Telford.

On July 31, 2017, plaintiff filed an amended complaint, adding an additional cause of action under ISRA and a new claim under the Site Remediation Reform Act (SRRA), N.J.S.A. 58:10C-1 to -29. On November 2, 2017, plaintiff filed a second amended complaint adding the Chemours Company and the Chemours Company FC, LLC as defendants. Plaintiff's second amended complaint alleged that the deed transfer of the Chambers Works site and the transfer of Chemours Stock to DuPont shareholders violated ISRA.

On July 9, 2018, plaintiff moved for partial summary judgment on count one relating to ISRA. On August 8, 2018, the trial court[1] granted partial summary judgment as to liability on count one, finding that the January 23, 2015 deed transfer of the Chamers Works site from DuPont to the Chemours Company

---

[1] The 2018 partial summary judgment was issued by a different judge than the 2024 summary judgment motion on appeal in the matter before us. References to the trial court in this section of the opinion refer to the 2018 trial judge.

FC, LLC triggered compliance with ISRA. The trial court found that defendants failed to comply with ISRA and its applicable regulations in that they (1) did not file the requisite documents with the New Jersey Department of Environmental Protection (DEP); (2) failed to remediate the site and surrounding impacted areas; (3) did not prepare or file a remediation cost review setting forth the remediation funding source (RFS); and (4) failed to post the necessary RFS.

Defendants moved for reconsideration of the partial summary judgment order on September 13, 2019. Defendants maintain that the motion for reconsideration of the 2018 partial summary judgment order has yet to be heard or decided.

In January 2017, plaintiff wrote to the DEP Commissioner to inform him of its lawsuit. In March 2017, plaintiff petitioned DEP to demand public participation pursuant to SRRA. DEP and EPA representatives held a meeting with Carney's Point Township representatives on May 12, 2017, at which plaintiff's representatives told DEP that the Township wanted "a seat at the table to participate in the remediation at the site and the RFS."

On May 18, 2017, the Carney's Point mayor wrote to the Bureau Chief of the DEP requesting information about DEP's enforcement activities at the site.

A-2427-24

DEP responded by letter dated July 24, 2017, advising the mayor that the EPA will "remain as lead for corrective action" at the site, and DEP "will continue to provide technical support."[2]

In 2019, DEP sued defendants and the 3M Company alleging violations of the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 to -23.24 (the Spill Act); the Water Pollution Control Act, N.J.S.A. 58:10A-1 to -20 (the WPCA); ISRA, and New Jersey common law. The case was subsequently removed to federal court. NJDEP v. E. I. du Pont de Nemours and Company, et al., Case No. 1:19-cv-14766-RMB-JBC.[3] DEP's third amended complaint was filed on July 25, 2024, and remains active.[4]

In this case, defendants filed a motion for summary judgment on September 8, 2022, seeking dismissal of plaintiff's second amended complaint in its entirety. Pursuant to a series of consent case management orders, the parties agreed to pursue mediation prior to the summary judgment motion being

---

[2] The record indicates that the EPA has been involved in the site for decades, issuing a Hazardous and Solid Waste permit in 1988.

[3] We note that Telford is not a defendant in the federal action.

[4] Plaintiff's request to intervene in the federal case was denied by order and opinion dated November 19, 2024. NJDEP v. E.I. du Pont de Nemours and Company, et al., Case No. 1:19-cv-14766-RMB-JBC, Dkt. No. 396.

A-2427-24

heard. The 2024 trial court[5] issued a case management order on May 21, 2024, directing defendants to renew their summary judgment and reconsideration motions, which would be returnable on September 13, 2024.

Defendants filed for renewed summary judgment on August 9, 2024, seeking dismissal of plaintiff's complaint with prejudice based on lack of standing under the ERA. Oral argument was heard on September 27, 2024. Defendants argued that because the DEP is seeking enforcement at the site, the ERA precludes other individuals from maintaining a separate action. Defendants further argued that private enforcement under the ERA is premature until the sufficiency of DEP action has been assessed and determined to be lacking.

Plaintiff responded that its 2016 complaint and the DEP's 2019 complaint are not related, and, regardless, ISRA provides a municipality with an independent right to monitor ISRA compliance. Plaintiff further argued that it pursued the deed transfer ISRA violation when the DEP failed to do so, and that the DEP cannot displace a litigant when it fails to act. Moreover, plaintiff

---

[5] As previously noted, the 2018 partial summary judgment was issued by a different judge than the 2024 summary judgment motion now before us. From this point on, references to the trial court in this opinion refer to the 2024 trial judge.

A-2427-24

argued that summary judgment was improper because the 2018 order granting plaintiff summary judgment as to liability on count one provides the requisite standing to pursue the present claim. Finally, plaintiff argued that it filed the present action prior to the DEP, and that based on DEP's failure to act, the township was vested with standing under the ERA.

The trial judge denied summary judgment by order dated November 5, 2024, accompanied by a ten-page written opinion. The trial court found that plaintiff had presented sufficient evidence demonstrating that DEP failed to enforce ISRA violations. Specifically, the trial judge noted that the August 8, 2018 partial summary judgment order listed six ISRA violations, and the DEP did not initiate its own lawsuit until 2019. The trial judge further concluded that plaintiff had standing under the ERA because the DEP "abdicated their ISRA enforcement responsibility." Citing Howell Township v. Waste Disposal, Inc., 207 N.J. Super. 80, 96 (App. Div. 1986), the judge explained that when DEP fails to act, it is not entitled to preemptive jurisdiction, and if DEP seeks less than the full relief available under the law, other parties are permitted to seek relief under the ERA. Finding that plaintiff had independent standing under the ERA.

Defendants filed a motion for leave to appeal the trial judge's denial of summary judgment, which we denied. The Supreme Court granted defendants' motion on April 8, 2025 and remanded the appeal to us for consideration on the merits.

This appeal follows. Defendants raise the following contentions for our consideration:

POINT I

THE TRIAL COURT ERRED IN DENYING SUMMARY JUDGMENT BECAUSE NJDEP IS ACTING AT THE SITE, PRECLUDING PLAINTIFF'S STANDING UNDER THE ERA.

A. The ERA authorizes a limited private cause of action, intended as a backup to NJDEP's primary enforcement authority, to be invoked only when regulators have failed or refused to act

B. The trial court erred as a matter of law in construing governmental "action" under the ERA to mean only "litigation."

C. NJDEP and EPA are actively enforcing environmental laws at the Site.

D. NJDEP's comprehensive actions preempts Plaintiff's parallel claims and compels dismissal for lack of standing and mootness.

A-2427-24

POINT II

THE TRIAL COURT ERRED IN DENYING
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT BECAUSE IT LOOKED BEYOND THE
PLEADINGS AND EVIDENTIAL MATERIAL AS
SUBMITTED.

    A. Plaintiff has not disputed Defendants' Statement
of Material Facts.

    B. Without finding a genuine issue of material fact,
the trial court improperly looked beyond the
pleadings and evidential record to misinterpret the
ERA.

II.

We first address the parties' standing arguments. On appellate review, we afford no deference to a trial court's conclusions on issues of law. See Nicholas v. Mynster, 213 N.J. 463, 478 (2013) ("In construing the meaning of a statute or the common law, our review is de novo."). "Preemption determinations are reviewed de novo, as are the issues of statutory interpretation necessary to the preemption inquiry." In re Alleged Failure of Altice USA, Inc., 253 N.J. 406, 415 (2023) (citing In re Reglan Litig., 226 N.J. 315, 327 (2016)).

A.

"Standing is a threshold requirement for justiciability," Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 421(1991), and "refers to the plaintiff's

10

ability or entitlement to maintain an action before the court." N.J. Citizen Action v. Riviera Motel Corp., 296 N.J. Super. 402, 409 (App. Div. 1997). The ERA provides:

> Any person may commence a civil action in a court of competent jurisdiction against any other person alleged to be in violation of any statute, regulation or ordinance which is designed to prevent or minimize pollution, impairment or destruction of the environment. The action may be for injunctive or other equitable relief to compel compliance with a statute, regulation or ordinance, or to assess civil penalties for the violation as provided by law. The action may be commenced upon an allegation that a person is in violation, either continuously or intermittently, of a statute, regulation or ordinance, and that there is a likelihood that the violation will recur in the future.
>
> [N.J.S.A. 2A:35A-4(a).]

"The ERA . . . grants a private person standing to enforce an environmental protection statute as an alternative to inaction by the government which retains primary prosecutorial responsibility. [The] ERA does not itself provide any substantive cause of action." Superior Air Prods. Co. v. NL Indus., Inc., 216 N.J. Super. 46, 58 (App. Div. 1987). See also In re The Flintkote Co. 8 E. Frederick Place, LLC, 655 F. App'x 931, 933 (3d Cir. 2016) (applying New Jersey law) ("The ERA permits citizens to bring suits for injunctive relief 'to compel compliance' with New Jersey's environmental laws." (quoting N.J.S.A.

2A:35A–4(a))).  "If, in a particular instance, the State does not act at all, the statute permits the citizen to sue the polluter directly to enforce laws which protect the environment."  Ironbound Health Rights Advisory Comm'n v. Diamond Shamrock Chem. Co., 216 N.J. Super. 166, 174 (App. Div. 1987).  "Even if the State takes action, a citizen may under some circumstances supplement that action . . . by directly pursuing the polluter."  Ibid. (internal quotation marks omitted).

In Howell, we addressed the question of "who and under what circumstances persons other than the State Department of Environmental Protection can sue to enforce diverse environmental protection legislation enacted in New Jersey".  207 N.J. Super. at 83.  We found it "clear that the legislature has entrusted to the DEP primary and supervisory enforcement powers under the various environmental protection legislation."  Id. at 94-95 (citing Sponsor's Statement to A. 1245 (Feb. 15, 1974), enacted as the ERA).[6]

---

[6]  The Sponsor's Statement provides:

> The bill recognizes that the primary responsibility to prosecute polluters rests with government.  In those instances where government is unable or unwilling to take the necessary action, any person should be assured of an alternative course of action.

The <u>Howell</u> court noted that the ERA notice requirement protects the DEP's interests when an ERA plaintiff brings a private suit. When the DEP declines to intervene, private action may proceed. We explained:

> Obviously, this notice requirement was designed to allow that agency to exercise value judgments in individual cases, e.g., whether it will join in that litigation or enforcement proceeding, whether other actions it may have taken already with respect to the particular problem or offender would render the litigation subject to collateral estoppel or res judicata principles, whether its expertise would assist the court, whether broad state interests would be sacrificed unduly to regional or personal interests by the instigators of that litigation, etc. Obviously, if the DEP expresses no interest and elects not to join that action, in the absence of a court ordering it to be made a party, as occurred here, (<u>R.</u>4:28–1), the action may proceed in accordance with the rights accorded in the [ERA].
>
> [<u>Howell</u>, 207 N.J. Super. at 95.]

The <u>Howell</u> court then considered whether plaintiffs lose standing once the DEP elects to intervene. We held that "there is no per se rule which will serve as an appropriate solution to all situations which may be posited. Rather the solution lies within the framework of the individual set of facts in each case." <u>Id.</u> at 95. We added:

---

[<u>Sponsor's Statement</u> at 5.]

> We believe that the determination of whether DEP, in a given situation, has exercised properly its preemptive jurisdiction should be resolved by the court when it is asserted that, DEP has failed in its mission, neglected to take action essential to fulfill an obvious legislative purpose, or where it has not given adequate and fair consideration to local or individual interests. In other words where the state agency has failed or neglected to act in the best interest of the citizenry or has arbitrarily, capriciously or unreasonably acted, then a court should permit interested persons to continue with enforcement under the Environmental Rights Act.
>
> [Id. at 96 (citing Student Public Interest Research Group v. Fritzsche, Dodge & Olcott, 579 F. Supp. 1528 (D.N.J.1984), aff'd. 759 F.2d 1131 (3rd Cir.1985)).]

However, we also made clear that "absent bad faith, negligence or inaction, indicating abdication of its responsibilities," DEP should remain the primary enforcer of environmental legislation. Ibid.

In Superior Air Prods., we reaffirmed that the ERA grants standing to enforce environmental legislation "as an alternative to inaction by the government[,] which retains primary prosecutorial responsibility." 216 N.J. Super. at 58-59. Echoing the Howell court's reasoning, we noted that "[t]he overall aim of the ERA appears to be to promote vigilant concern for the environment by the creation of a private right to sue for statutory enforcement without a showing of special damages, while at the same time minimizing the potential proliferation of private law suits to those bona fide instances when the

14                                                    A-2427-24

government has not acted." Ibid. We then clarified the Howell decision, explaining:

> [P]ursuit of the private ERA claim must await DEP action in order to assess the sufficiency of its efforts, actions and remedy. Hence, DEP's action under the Spill Act is preemptive of private rights under ERA at least where the DEP acts prior to or upon filing of an ERA proceeding and where the DEP action subsequently proves sufficient to protect the environment.
>
> [Id. at 61.]

Although Superior Air Prods. involved the interplay of the Spill Act and the ERA, its basic preemption principle has been applied to other environmental legislation. Accordingly, where the DEP "acts prior to or upon filing of an ERA proceeding," a plaintiff is generally precluded from bringing a claim. Ibid.

In Port of Monmouth Development Corporation v. Middletown Township, we considered whether a private purchaser of a non-operational landfill had ERA standing in light of steps taken by the DEP against the defendant township for failing to properly close the site, including filing a notice of prosecution, coming to an agreement concerning the engineering plans for closure, and filing an order against the defendant township concerning its failure to obtain an approved registration statement or an approved engineering design. 229 N.J. Super. 445, 451 (App. Div. 1988). Despite those efforts, the DEP had taken no

15

legal action and imposed no monetary sanctions to compel proper closure of the landfill, despite it being non-operational for twelve years. Id. at 450-51. We agreed with the trial court's determination that "[t]he DEP is . . . doing a dance" and concluded that "[a]fter 'dancing' for twelve years, it seems reasonable to conclude that the DEP has failed to act effectively to compel closure in accordance with the regulations." Id. at 451. The court determined there was "no reason for plaintiff and the public to wait any longer." Ibid.

It bears noting that the Third Circuit Court of Appeals reached a contrary conclusion in In re The Flintkote Co. 8 E. Frederick Place, LLC, 655 F. App'x 931 (3d Cir. 2016). In that case, the court found that the record demonstrated that the DEP had "actively supervised the cleanup of the property," and, therefore, plaintiff was precluded from lifting the stay of a bankruptcy action that would allow a claim under the ERA. Id. at 934. The federal court, applying New Jersey law, commented on the DEP's efforts, emphasizing that it had sent the violator company "at least 14 letters during the relevant time period, called attention to the deficiencies of the cleanup process, and directed further work," and "[t]his oversight belie[d] any allegations that the [DEP] ha[d] failed to act in the best interests of its constituents or that it ha[d] otherwise conducted its work in an arbitrary, capricious, or unreasonable manner." Ibid. The federal

16

court further found that "[t]he question before the [court] was whether, as of 2012 when it granted summary judgment, the [DEP] was sufficiently engaged such that there was no private right of action for injunctive relief under the ERA." Ibid. The court concluded that at the time of summary judgment, the DEP was sufficiently engaged, triggering preemption. Ibid.

We note, finally, that the question of whether the DEP was "sufficiently engaged" is fact sensitive. We are aware of no categorical rule that precludes a town from bringing its own environmental lawsuit with respect to a contaminated site that is the subject of the DEP's attention, especially when, as in this case, the DEP was alerted to the lawsuit and declined a demand to intervene. See Mayor & Council of Borough of Rockaway v. Klockner & Klockner, 811 F. Supp. 1039, 1054 (D.N.J. 1993) ("Although the Complaint does allege that the EPA and DEP have taken various investigatory steps over the course of over ten years, this alone does not bar an action . . . [a] private plaintiff is not precluded from bringing an action merely because a governmental agency has taken some action with respect to the matter. Nor must [a plaintiff] wait until the completion of all activity by the government . . . the ERA may be used as a supplement to actions taken by the government.").

B.

We next apply these precedents to the matter before us. Defendants maintain that since "robust governmental action" has been ongoing at the Chambers Works site since 1984, standing could never exist. Defendants further contend that the trial court's decision would effectively unseat the DEP as the principal enforcer of environmental legislation and would implicitly endorse duplicative lawsuits.

Plaintiff responds that defendants seek an unduly broad interpretation of preemption doctrine that would "defeat[] the underlying purpose of the ERA, which is to permit an ERA plaintiff to act when the DEP fails to act, acts insufficiently, or acts without regard to the public interest."

Although we review the standing question de novo, see Nicholas, 213 N.J. at 478, considering the totality of the circumstances, we agree with the 2024 motion judge that plaintiff has presented sufficient evidence that the DEP has effectively chosen to permit the Township to protect its own interests. Specifically, the trial court noted that the August 8, 2018 order granting partial summary judgment to plaintiff listed six individual ISRA violations, yet the DEP failed to institute its own lawsuit until 2019. The trial judge also found "no

reason why [the 2018 order][7] and findings of ISRA violations should be overturned."  The judge explained:

> Specifically, [p]laintiff's opposition brief contends that DEP abdicated their ISRA enforcement responsibility, essentially forcing the Township to prosecute their claims independently.  Indeed, for years after Plaintiff initially filed this action in 2016, DEP made no effort to intervene.  DEP failed to institute their own legal action until 2019.

The trial court further reasoned that "it is undisputed that [p]laintiff instituted their [c]omplaint well before DEP," and pursuant to Superior Air Prods., 216 N.J. Super at 61, preemption applies if the DEP acts "prior to or upon filing of an ERA proceeding."

We reiterate the case law makes clear that standing under the ERA is fact-sensitive and dependent on the sufficiency, timing, and efficacy of DEP action.  Notably, plaintiff alerted the DEP of its then-nascent lawsuit, and DEP expressly declined to intervene.  If the agency had wanted to preempt the township's litigation, it had every opportunity to do so from the start but made a conscious

---

[7] The 2024 judge's rationale for not overturning the prior order finds support in the law-of-the-case doctrine.  "Under the law-of-the-case doctrine, decisions of law made in a case should be respected by all other lower or equal courts during the pendency of that case."  Lanzet v. Greenberg, 126 N.J. 168, 192 (1991) (citing State v. Reldan, 100 N.J. 187, 203 (1985); State v. Hale, 127 N.J. Super. 407, 410–11 (App. Div. 1974)).  We note, however, that the motion for reconsideration on the prior summary judgment order is still pending.

decision not to. Tellingly, the DEP has not appeared in this matter, either to urge the 2024 motion court to dismiss plaintiff's complaint or to urge us to overturn the decision to deny summary judgment dismissal. In these circumstances, we see no error in the 2024 court's decision to recognize plaintiff's standing to prosecute this environmental litigation.

III.

We turn next to defendants' contention that the court erred in denying summary judgment dismissal by looking beyond the pleadings and evidentiary material before it. Defendants claim that plaintiff's material statement of facts in its summary judgment opposition was procedurally deficient because it contained no record citations; therefore, all facts in defendant's motion should be deemed to be admitted. Defendants further assert the court improperly permitted plaintiff to amend its complaint without affording proper notice.

We review a trial court's grant or denial of summary judgment de novo. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). Summary judgment motions are governed by Rule 4:46-2(c), which provides that a motion for summary judgment is to be granted,

> if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is

20

entitled to a judgment or order as a matter of law. An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.

See also Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520 (1995).

In the distinctive circumstances of this case, we are satisfied the motion court did not err in looking beyond the pleadings in denying defendant's summary judgment motion. The genuine issue of material fact is whether DEP action was sufficient to preempt plaintiff's standing under the ERA. See In re New Jersey Pinelands Comm'n Resolution, 356 N.J. Super. 363, 375 (App. Div. 2003) (a "private cause of action may still lie if the effort provided by DEP enforcement proves insufficient."). The trial court found that "[p]laintiff ha[d] presented sufficient evidence that such a failure ha[d] occurred." The parties continue to dispute this question.

Defendant is correct that procedurally, summary judgment is not the proper vehicle to amend a complaint. Pursuant to Rule 4:9-1, after a responsive pleading has been filed, a party may amend a pleading "by written consent of the adverse party or by leave of court." However, "it is well-settled that appeals are taken from orders and judgments and not from opinions, oral decisions,

21

informal written decisions, or reasons given for the ultimate conclusion." <u>Do–Wop Corp. v. City of Rahway</u>, 168 N.J. 191, 199 (2001). Thus, while it was procedurally incorrect to limit the relief plaintiff's complaint sought, it was not dispositive of the court's ultimate decision to deny summary judgment following its determination that plaintiff had standing. The judge's decision to limit the statutory penalties to the period before the DEP filed suit did not change the judge's determination that plaintiff had standing under the ERA when it filed its 2016 lawsuit based on DEP's inaction.

To the extent we have not addressed them, any remaining issues raised by defendants lack sufficient merit to warrant discussion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-2427-24